## Kentucky Hydro-Electric Company v. Woodard, et al.

(Decided October 15, 1926.)

### Appeal from Mercer Circuit Court.

1. Eminent Domain—Acceptance of Money Direct from Condemnor in Satisfaction of Judgment Condemning Easement, and Failure to Appeal, Estops Owner from Questioning Right to Condemn (Kentucky Statutes, Section 1599b-1, et seq.).—Owner of land condemned for easement for electric transmission lines, taking no appeal from judgment of condemnation of county court, but accepting money paid by company in satisfaction of judgment, was estopped to question defendant's right to condemn, under Kentucky Statutes, section 1599b-1, et seq., on appeal to Court of Appeals, though money was not first paid into court and then withdrawn by owner.

2. Eminent Domain—Condemnor of Easement, Taking Possession of Property and Paying Verdict to Owner of Property, May Appeal from Verdict, But Cannot Elect Not to Take the Property if Verdict is Increased on Appeal (Kentucky Statutes, Sections 835, 840, 1599b-2).—Under Kentucky Statutes, sections 835, 840, 1599b-2, condemnor of easement for electric transmission lines, taking possession of property and paying amount of verdict and costs direct to owner of property, does not thereby lose right of appeal, but if on appeal verdict is increased, condemnor cannot elect not to take the property.

3. Eminent Domain—Property in Vicinity of Land Sought to be Condemned Must be Similar in all Essential Particulars to Render Value Admissible to Establish Value of Property Sought to be Condemned.—In determining value of land sought to be condemned for easement, to render value of property in vicinity of such land admissible it must be similar in all essential particulars, so as to raise logical inference that same elements of value exist in both cases.

4. Eminent Domain—Amount Paid for Easements for Transmission Lines Through Other Farms is Not Admissible to Prove Value of Easement Through Defendant's Farm Without Proof that Farms were Affected in Same Manner.—Testimony as to amount

paid for easement for transmission lines through farms of same quality and value as defendant's farm held properly excluded in determining value of easement through defendant's farm, where there was no proof that transmission lines affected other farms in same manner as defendant's farm.

5. Eminent Domain.—Compensation for easement for transmission line through farm includes value of land taken and resulting damages to rest of farm.

6. Witnesses.—Under Civil Code of Practice, sections 605, 606, 607, jurors in condemnation proceedings in county court are competent witnesses in same proceeding on trial de novo in circuit court.

7. Witnesses.—Service of juror in former trial of a cause does not disqualify him as a witness in a subsequent trial.

8. Eminent Domain.—Modification of instruction not to consider fear by prospective purchasers of farm, in awarding damages for easement for electric transmission lines, to the effect that such fear should grow out of lack of knowledge of operation of lines or future negligence of electric company held confusing.

9. Eminent Domain.—Damages for condemnation of easement over farm for electric transmission lines does not include fear of danger by owner or purchasers from construction or maintenance of lines.

10. Eminent Domain—Requested Instruction Not to Award Any Damages for Depreciation in Market Value of Land Due to Any Fear of Danger Held Properly Refused Unmodified.—In proceedings to condemn easement for electric transmission lines, requested instruction not to award any damages for depreciation in market value of land arising out of any apprehension of danger from existence of lines held properly refused unmodified.

11. Eminent Domain—Reasonable Apprehension of Danger by Construction of Electric Transmission Lines Over Farm, Actually Depreciating Market Value of Farm, May be Considered in Fixing Damages Caused by Construction of Lines.—Apprehension of danger occasioned by construction of electric transmission lines over farm, if reasonable and founded on experience and tending to depreciate market value of property, may be considered in determining damages to owner by construction of lines.

12. Eminent Domain—Verdict of $1,500.00 for Land Taken and Burdened by Easement Over Farm for Electric Transmission Lines Held Excessive.—In proceeding to condemn easement over farm for electric transmission lines, verdict of $1,500.00 on account of land taken and burdened by easement held excessive.

13. Eminent Domain—Verdict of $8,500.00 as Damages for Diminution in Value of Farm by Construction of Electric Transmission Lines Over Farm, Based Largely on Fear of Danger, Held Excessive.—In proceedings to condemn easement for electric transmission lines, evidence as to diminution as to value of farm caused by construction of lines, largely based on element of fear, by witnesses of danger from construction of lines, not properly allowable as damages, held to show that verdict of $8,500.00 was excessive.

14. Eminent Domain—If Judgment of Circuit Court in Condemnation Proceedings is Less than That of County Court, Condemnor Should be Allowed Interest on Difference from Date of Payment of Money.—If judgment of circuit court in proceedings to condemn easement for electric transmission lines is less than judgment of county court, condemnor appealing from judgment should be allowed interest on difference from date of payment of money to owner of land.

ROBERT G. GORDON, BRUCE, BULLITT, GORDON & LAURENT, CHENAULT HUGUELY, C. E. RANKIN and E. H. GAITHER for appellant.

N. L. BRONAUGH, FULTON & FULTON, CHAS. T. CORN and ROY E. GRAVES for appellees.

OPINION OF THE COURT BY JUDGE DIETZMAN—Reversing on the original appeal and affirming on the cross-appeal.

The appellant, Kentucky Hydro-Electric Company, is a Delaware corporation which has constructed and is now operating a hydro-electric plant on the Dix river near its junction with the Kentucky river. It transmits the electricity there generated over a transmission line which runs from the plant through Mercer and other counties until it reaches the Ohio river near Louisville in Jefferson county. There the transmission line crosses the Ohio river into Indiana. The power thus transmitted is sold to certain local public utility companies, such as the Kentucky Utilities Company in Shelbyville, and the Louisville Gas & Electric Company in Louisville, which serve communities located along the transmission line. These local utility companies, in turn, sell the power thus bought to the communities they serve. The appellant, however, does not undertake to supply service to all individuals located along its transmission lines who may apply for such service. The transmission line consists of a series of steel towers placed at intervals of not less than six hundred feet, to the top of which on insulators are strung the wires which carry the current. These towers are constructed of interchangeable parts so as to be easily repaired in the event of any part of them breaking or getting out of order. The power plant is equipped with circuit breakers which automatically cause the current, which courses through the wires, to be cut off the instant any wire breaks and grounds.

In securing its right of way for its transmission line through the country from its plant to the Ohio river, the appellant, at least so far as Mercer county is concerned, was able to do so by private arrangements made with all the property owners through whose land the line passes with the exception of the appellee, C. S. Woodard, who owns a farm of 480 acres. Being unable to agree with him, the appellant instituted, in the Mercer county court, this proceeding to condemn a right of way or easement through appellee's farm for its transmisison line. The nature of the easement thus sought to be condemned is accurately and concisely stated in one of the instructions of the circuit court to the jury, thus:

"  .   .   .   (The) easement consists of the following rights: (a) To construct, operate and maintain at the points described in the evidence seven steel towers, each of which consists of four supports placed in the ground interlaced together for strength, and which shall occupy a space on the ground and in the air of not greater than 20 feet square. Said towers shall be located at intervals of not less than 600 feet. On said towers there shall be constructed cross arms and on the cross arms wires shall be strung from tower to tower which shall transmit electrical energy. All such wires shall be at least 20 feet above the ground at the nearest point and the aggregate width of all lines shall not exceed 25 feet.

"(b)  .   .   .   To trim or remove any and all trees on the lands of defendants (appellees) within 50 feet of the center line of said transmission lines which might interfere with the construction, operation, repair, renewal or maintenance thereof.

"(c)  .   .   .   To prevent the landowner from erecting any building on his lands within a space of 25 feet on either side of said transmission lines.

"(d)  .   .   .   To go upon the lands of the defendant for the construction, operation, repair and maintenance of said lines, but in exercising said right, it cannot go upon any part of the lands of the defendant except within a space of 12½ feet on either side of the center line of said transmission line right of way described in the evidence.

"(f)  The defendants retain the ownership, use, occupancy and enjoyment of the land not actually

occupied by the towers of the plaintiff, to the extent that such ownership, use, occupancy and enjoyment may not interfere with the exercise of the rights of the plaintiff described in this instruction 1."

The appellant is to pay all damages that may be caused to fences, crops, animals and other property of the appellees, including the land not actually occupied by the towers in constructing, operating, repairing, maintaining and inspecting said line.

The transmission line (which has now been constructed) approximately bisects the appellees' farm, running through it for a distance of 5,821½ feet. For a portion of its distance it runs along a private road on the side opposite to that on which appellees' house is located. It also runs between the appellees' house and their barn. The appellees in the county court took proper steps to question the right of appellant to condemn the right of way in question, but their efforts there in this regard were fruitless. The commissioners appointed by the county court reported that the land actually proposed to be taken by the appellant was worth $500.00 and the resulting damages to the rest of the farm was worth $450.00. On exceptions by both parties to this report the case was tried in the county court, where the jury found a verdict for the appellees in the sum of $12,000.00. The appellant paid this sum to the appellees and then prosecuted an appeal from the county court judgment to the circuit court but took possession of the easement it sought to condemn and constructed its transmission line. In the circuit court the appellees filed an amended answer to the effect that the judgment entered in the county court had been accepted by the appellant and paid; that the appellees had accepted that payment in full satisfaction of the judgment, and appellant had taken possession of the easement and constructed its line, by reason of all of which there was no further issue between the parties to be litigated. A motion to dismiss the appeal, based on the same state of facts, was also filed by appellees. This motion was overruled and a demurrer was sustained to the amended answer. On the trial, the jury found for the appellees in the sum of $10,000.00, of which $1,500.00 was for the land actually taken by appellant, and $8,500.00 for the resulting damages to the remainder of the farm. The judgment of the circuit court

entered on this verdict provided that appellant should recover back from the appellees the $2,000.00 excess paid under the county court judgment but did not award appellant any interest on this sum. From this last judgment, appellant prosecutes this appeal, and the appellees prosecute a cross-appeal.

We will first dispose of the cross-appeal. Appellees insist, first, that the appellant, due to the character of its business, has no authority to condemn private property for such a transmission line as it has built here, and that if section 1599b-1, et seq., of the statutes give appellant such authority, these sections are unconstitutional. Secondly, that as appellant had paid to the appellees the amount of the county court judgment and had taken possession of the easement sought, it had no right to prosecute the appeal it did to the Mercer circuit court or this appeal to this court.

With regard to the first contention, appellees are now clearly estopped to question the right of appellant to condemn the easement in question. They took no appeal from the county court judgment of condemnation, but, on the contrary, accepted the money paid them by appellant in satisfaction of that judgment. Further, in the circuit court, appellees took the position, as indeed they do in this court, that there was no issue pending between them and appellant as the appellant had paid them the county court judgment, had taken possession of the easement it sought and they had accepted the payment in full satisfaction of the controversy. In the case of Elizabethtown L. & B. S. R. Co. v. Catlettsburg Water Co., 110 Ky. 175, 61 S. W. 47, the appellee was questioning the right of the appellant to condemn a part of appellee's property. The record showed that the appellee took no appeal from the county court judgment of condemnation but, on the contrary, withdrew from court, by an agreed order, the amount of the judgment which the appellant had paid in. No writ of possession was issued in that case, but appellant took possession of the strip of land condemned and built its structures upon it. We held that the transaction was incapable of any other construction than that the appellee agreed to take the money and let appellant take the property, for which reason appellee was thereafter estopped to question the right of appellant to condemn the land in question. In the case before us, it is true that the appellant did not pay the

judgment into court but directly to the appellees. It did take, with the acquiescence of the appellees, possession of the land without a writ of possession. The appellees accepted the payment thus made them, as they say in their amended answer and motion to dismiss the appeal in the circuit court, in full satisfaction of appellant's liability to them. They took no appeal to the circuit court. The fact that this money was not paid into court by appellant and withdrawn by appellees, as was done in the Catlettsburg Water Company case, *supra,* does not make this case different in legal principle from that case, since the payment into court and the withdrawal by the water company in the Catlettsburg case by an agreed order is not different in principle from a payment directly to the appellees in this case. The essence of the estoppel or waiver adjudged in the Catlettsburg Water Company case, *supra,* does not rest on the method by which the payment is made to the landowner, but rather on the fact that the landowner accepts the payment made to him, either directly or indirectly, by a payment into and a withdrawal from court of the amount, and then prosecutes no appeal to the circuit court from the county court. It is plain, then, that appellees may not blow both hot and cold, and having failed to take an appeal from the Mercer county court judgment, but, on the contrary, having accepted and retained the amount of the Mercer county court judgment in full satisfaction of appellant's liability to them, they are now estopped to question the right of appellant to condemn the easement here sought.

As to the second ground on which the cross-appeal is based, it was distinctly held in the case of Madisonville H. & E. R. Co. v. Ross, 126 Ky. 138, 103 S. W. 330, construing section 839 of the statutes, that a condemnor clearly has the right to appeal from an adverse verdict, and yet, pending the appeal, take possession of the property, provided it pays into court for the benefit of the owner, or to the owner, the amount of the verdict and costs. As pointed out in Long Fork Ry. Co. v. Sizemore, 184 Ky. 54, 211 S. W. 193, if the condemnor elects to pay the verdict and costs into court and to take possession of the land sought to be condemned, it is not thereafter deprived of its right of appeal; but the condemnor may not thereafter, if the verdict on appeal is greater than that appealed from, elect not to take the property. In this Sizemore case it was further pointed out that the right

to take possession before final determination and payment of the damages may be exercised by the condemnor only where the owner waives his constitutional right of actual previous payment to him, or where the deposit in court amounts to a tender to him, thus making it perfectly plain that the right to an appeal, despite the fact that payment has been made to the property owner, does not depend on whether the payment was made directly, as the Constitution requires, before the corporation can take possession of the strip, or into court under such circumstances showing a waiver on the part of the owner of an actual previous payment to him, or showing that such payment into court amounts to a tender to the landowner. The statutes plainly intended that the parties to condemnation proceedings should have the right of appeal and that the work should not be held up pending such an appeal. But under the Constitution, unless payment or tender be made to the landowner, the condemnor has no right to take possession of the land condemned. Hence any other construction than this court has put on the statute would result either in depriving the parties of an appeal or in holding up the work pending the appeal. The purpose and policy of the statute is plainly otherwise. The appellant made its election with regard to taking the property here involved when it paid the verdict to the appellees and took possession of the easement. It is thereafter confined on appeal to the sole question of how much it will have to pay for the land. Section 1599b-2 of the statutes prescribes the method of condemnation in cases like the one before us, and it adopts by reference the method laid down in sections 835-840, inclusive, of the statutes. Therefore, it is plain that, under the Ross and Sizemore cases, *supra*, the appellant did have the right to prosecute the appeal it did to the circuit court, and does have the right to prosecute this appeal to have determined what amount it must pay for the easement it has taken.

We conclude, therefore, that, on the cross-appeal, the judgment must be affirmed.

On the original appeal five grounds are urged for reversal: (a) Error in the exclusion of offered testimony; (b) error in the admission of testimony offered by appellees; (c) error in instructions; (d) excessiveness of the verdict; and (e) error in disallowing appellant interest on $2,000.00, being the difference between the

amount of the verdict in the county court paid to the appellees by appellant, and the $10,000.00 verdict of the circuit court. Considering these grounds in their order:

(a)    Appellant first offered to show that the land of the appellees through which its easement runs was not better in quality and value than the average of all the other lands in Mercer county through which its transmission line passes, and then offered to prove what the acquisition of the right of way through Mercer county, excepting, of course, appellees' land, had cost it. It will be noted that appellant did not undertake to prove simply the value of property similar to and in the vicinity of that of the appellees. Such testimony is admissible under the many opinions of this court, some of which are collected in the recent case of Big Sandy & K. R. R. Co. v. Stafford, 207 Ky. 272, 268 S. W. 1071, on the theory that it tends to establish the value of the property sought to be condemned. But even this rule requires that the similarity in all essential particulars must be such as to raise a logical inference that practically the same elements of value are present in both cases. West Kentucky Coal Co. v. Dyer, 161 Ky. 407, 170 S. W. 967; 22 C. J. 761. What appellant here undertook to do was to prove what it had paid for a right of way through farms equal in quality and value to that of appellant. Now, it is obvious that the purchase price of such a right of way necessarily included the two elements of damage involved in this litigation; that is, the value of the land actually taken for the easement and the damage resulting to the rest of the land by reason of the taking of the easement. There is a total lack of proof in this case that appellant's transmission line, as it runs through the other farms in Mercer county, affects them in the same fashion as it does the farm of the appellees. For instance, as stated, appellant's line bisects appellees' farm, enters it near a spring, and, for a portion of its length, runs along a private right of way on the side opposite to that on which appellees' residence abuts; it crosses a road and a telephone wire connecting appellees' residence with the barn and the outside world; one of the towers is erected near the front of appellees' dwelling; and appellees' privacy in their home is in some measure curtailed by appellant's right of patrol. All of these matters may have a tendency to affect the market value of that part of appellees' farm not actually taken

by appellant for its easement in the eyes of prospective purchasers. On the other hand, for aught that appears in this record, this transmission line may run through the other farms along a fence row, or across their back ends, out of sight of the residences and where its erection can interfere practically not at all with any use to which the owners may wish to put their farms. Thus it is clear that appellant failed to show such similarity in resulting damage between appellees' farm and the other farms of Mercer county through which its transmission line runs as to raise a logical inference that practically the same elements of value were present in both cases. What appellant paid for its right of way included compensation not only for such land as was taken but also such resulting damage as the rest of the property incurred. As this second factor must necessarily have been a variable one in the case of each farm, appellant failed to bring itself within the rule establishing the competency of testimony covering the value of similar tracts of land in condemnation suits. Indeed, we doubt if appellant could have gone into questions of similarity where the farms through which it ran were so many and the factor of resulting damage different in each case. It would have taken the trial too far afield in collateral matters in the determination of the question of similarity. But that question is not before us and we need not decide it here. Appellant has cited us to the note in 43 L. R. A. (N. S.) 985, collecting the authorities *pro* and *con* on the question whether evidence of what the condemnor has paid others for land substantially similar to the land in question is admissible in condemnation suits. But, as the annotator says in his note: "The reader will recognize that cases excluding the evidence simply on the ground that the properties were dissimilar, do not reach our question," and since, as we have seen, the appellant did not establish similarity of conditions here, if it be permissible in a case like the one before us for it to do so, the authorities thus collected do not bear upon our problem.

For these reasons, then, we do not believe the trial court committed any error in excluding the evidence offered by appellant, the exclusion of which appellant relies upon for reversal.

(b) It is next contended that the court erroneously permitted eleven members of the jury, which tried this case in the county court, to testify for appellees as expert

witnesses on value on the trial in the circuit court. The argument is that the statute provides for a trial *de novo* in the circuit court; that it was impossible for the appellant to adequately cross-examine these eleven witnesses without eliciting from them the fact that they had been jurors in this case in the county court; that, necessarily, the jury in the circuit court would know, when this fact was brought out, what the verdict in the county court had been, and so would be influenced in the finding of their verdict by what their predecessors in the county court had done, and thus would be destroyed the provisions of the statutes providing for a trial *de novo*.

Section 605 of the Civil Code provides that, subject to the exceptions and modifications contained in section 606, none of which are applicable here, every person is competent to testify for himself or another unless he be found by the court incapable of understanding the facts concerning which his testimony is offered. Section 607 of the same Code provides that all other objections to the witnesses other than those referred to in section 606 shall go to their credit alone and be weighed by the jury or tribunal to which their evidence is offered.

Under these sections of the Code, appellees' witnesses here in question were competent. It may be that appellant would, in some measure, be circumscribed on its cross-examination if it feared that knowledge on the part of the circuit court jury of the fact that the witness had been a member of the county court jury would influence the former's verdict. But the provision of a trial *de novo* does not destroy the competency of witnesses. Although the authorities are not in accord on the proposition whether or not a juror in a pending case can be called from the box to testify in such case and then allowed to return to the box—See Wigmore on Evidence, vol. III, section 1910—they are overwhelmingly in accord on the proposition that service as juror on a former trial of a cause does not disqualify one as a witness on a subsequent trial. Thus in Hughes v. Chicago, St. P. M. & O. R. Co., 126 Wis. 525, a juror on a former trial was permitted in a subsequent trial to testify as to the condition of a railroad crossing on which the plaintiff was injured, which condition he had observed when taken, as a juror, to that place to view the premises. A like result was reached in Cramer v. City of Burlington, 42 Iowa 315. In Hull v. Seaboard Air Line Ry., 75 S. C. 278,

10 L. R. A. (N. S.) 1213, a juror in a companion case to the one on trial was permitted to testify about the condition of a trestle he had learned on the trial in which he was juror. See also People v. Ostrander, 110 Mich. 60; Woolfolk v. State, 85 Ga. 69; Savannah, etc. Ry. v. Quo, 40 L. R. A. 483 (Ga.). In all of these cases, the opposing side was somewhat handicapped, in its cross-examination of such witness, by the fact that it was desirable not to influence the present jury by knowledge of what a former jury had taken into consideration. Nevertheless, it was held that the competency of the witnesses was not thus destroyed. On the one hand, a party is entitled to the benefit of the testimony of all competent witnesses. On the other hand, the adverse party is entitled to a new trial as free from bias as can be given him. Again do we face a balancing of considerations. But in the determination of the truth, it is better that all competent evidence be heard than that some of it be suppressed because, forsooth, cross-examination may be handicapped for fear of a possible bias which it is the jury's duty to lay aside. The latter consideration cannot outweigh the former. We are of opinion, therefore, that the court did not err in permitting appellees' witnesses here complained of to testify.

(c) It is next contended that the court erroneously instructed the jury. This complaint of the appellant centers around instructions 5 and 7 as offered by it and 5 as given by the court. Instruction 7 as offered by the appellant, in substance, told the jury that it could not consider or award the appellees any sum in damages on account of any depreciation in the market value of defendant's lands arising out of any apprehension of danger by any one, which apprehension might arise from the existence of said transmission lines across said property. The court refused to give this instruction. Appellant's instruction 5 told the jury, *inter alia,* that it could not consider or award to the appellees any sum in damages on account of any apprehension by them or by any prospective purchasers of danger to themselves, their families, animals or property on account of the construction, operation, maintenance, and renewal of the transmission lines on the land sought to be condemned. The court gave this instruction, after modifying it by adding thereto a proviso to the effect that such apprehension of danger should grow out of a lack of knowledge of the

practical operations and effect of said lines or any future negligent act or acts upon the part of the appellant or its agents.

Appellant's complaint that the modification of the court is confusing is well founded, especially with reference to that part of the modification dealing with future negligent acts of the appellant and its agents. It is very hard to understand what the court meant by it. Appellant is further correct in its position that instruction No. 5, as offered by it, should have been given to the jury unmodified. As stated, this instruction told the jury not to award appellees any damages on account of any fears of danger to themselves, their families or animals, which they or any future purchaser might entertain on account of the construction or maintenance of this transmission line. The measure of damages in a case like this does not include such fear. It was so held in Cincinnati Gas Transportation Co. v. Cartee, 149 Ky. 89, 147 S. W. 925. Cf. L. & N. v. Hall, 143 Ky. 497, 136 S. W. 905; L. & N. v. City of Louisville, 131 Ky. 108, 114 S. W. 743. The damages are confined to the value of the land taken and the diminution, if any, in value of the rest of the land from which the strip is taken. But it does not follow that instruction No. 7 as offered by appellant should have been given unmodified. It will be remembered that this instruction told the jury that it could not award appellees any damages on account of any depreciation in the market value of that part of appellees' land not taken, arising out of any apprehension of danger by any one occasioned by the construction or operation of this transmission line. In support of this instruction, appellant relies on the case of Alabama Power Co. v. Keystone Lime Co. (Ala.), 67 Southern 833. That was a condemnation proceeding for a transmission line exactly like the one in the case before us. The Alabama court held that *mere* fears of people from the presence of the line could not be made a basis on which to predicate any depreciation in market value. In developing its thesis, the court said:

"While, therefore, it is the intent of the law that all the actual damages which may naturally and proximately result to the remainder of a man's tract of land, by reason of the condemnation of a right of way for a public purpose across it, shall be paid to

him, the law will not permit mere speculative elements of damages, based upon an ill-defined fear that at some unknown and indefinite time in the future some misfortune may come to some man or beast by reason of such improvement, to enter into the consideration of those who, under the law, are required to fix the amount of the damages.''

We think this premise of the Alabama court is sound. But it will be noted that it, in turn, is based on the idea that the fears entertained are ill-defined, speculative, not founded on reason or experience. Such fears should not enter into a calculation of damages to be awarded for depreciation of market value. They are too speculative and remote. But if such fears be reasonable, not ill-defined, but founded on practical experience, and if they be entertained so generally as to enter into the calculations of all who propose to buy or sell, can it logically be said that they do not depreciate the market value of the property? The property owner is to be paid for his actual damage. If he cannot sell his property at as good a figure with this line on it as he could without it by reason of reasonable fears, not speculative, but founded on experience, and entertained by those who wish to buy, has he not been damaged in this regard? It is no fault of his that the line has been erected. Under such assumed state of facts, his land has been depreciated on account of such fear on the part of buyers. Those who cause such damage should pay for it. The Utah Supreme Court so held in Telluride Power Co. v. Bruneau, 125 Pac. 399. The Cincinnati Gas Transportation Co. v. Cartee case, *supra,* in effect, likewise so holds, for, while we said in that case that ''fear'' was not an element of damage in a condemnation proceeding, it is evident the court was referring to a state of case covered by the fifth instruction offered by appellant and which we say was a correct exposition of the law. This Cartee case, however, did hold that the apprehension of future explosions was a factor to be considered by the jury in determining whether such probability of explosion would depreciate the market value of the land left after the condemned strip had been taken. In the case of L. & N. R. Co. v. White Villa Club, 155 Ky. 452, 159 S. W. 983, it appeared that the railroad was condemning a strip of ground through the premises of a country club. Among other things, the railroad

made excavations and constructed steep and unsightly banks on the strip taken. We held that if the market value of the property for the purpose for which it was being used and to which it was adapted was thus impaired, the jury were authorized to consider it in determining the depreciation, if any, of the market value of the land remaining after the strip condemned was taken. Although the considerations here were aesthetic in nature, yet as they, in fact, did depreciate the value of the land, they were something which, we held, should be taken into consideration in fixing compensation. It seems not only fair but extremely logical to us that, if there is a well-defined apprehension, not speculative, not unreasonable, but founded on experience and on a knowledge of the manner of the construction and operation of transmission lines such as the one here in question, and of the probability of harm in connection with such construction and operation so known, to persons and animals, which apprehension enters into the consideration of those who would buy appellees' property and tend to depreciate the price offered, such a kind of apprehension should be considered by the jury in determining the depreciation, if any, in the market value of the landowner's property. This being so, instruction No. 7 as offered by appellant was properly refused. On the next trial, however, if the evidence warrants it, the court will modify instruction No. 7 as herein indicated, and, as so modified, give it to the jury. It will omit the reference to future negligent acts of appellant and its agents. We do not see the necessity of the instruction No. 7 as given by the court, and it will be omitted.

(d) Appellant insists that the verdict in this case is grossly excessive. This verdict is composed of two elements: First, the amount awarded for the land taken or burdened by the easement here in question, which was $1,500.00; and, secondly, the amount awarded for the diminution in value of the remainder of the land, which was $8,500.00.

First, with reference to the amount awarded for the land taken or burdened by the easement. Appellees' farm is about three miles from Shakertown, in Mercer county, and lies about a quarter of a mile back from the public highway. Access is obtained to appellees' farm over a private passway which runs towards and then along the front of appellees' home to his barn and outbildings.

It is not contended in this record that appellees' farm is suitable for subdivision, either into town lots or small tracts of land. Although the farm is suited for general agricultural purposes, it has, in the main, been used for grazing purposes. Appellant's witnesses placed a value on this farm of from $80.00 to $100.00 per acre. Appellees' witnesses, excepting Woodard himself, estimated the value to be from $125.00 to$150.00 per acre. Appellee Woodard placed a value on his farm of from $175.00 to $200.00 per acre. He paid for the farm in 1917, $40,000.00, which is slightly in excess of $80.00 per acre. He claimed that since 1917 the value of this land has increased from $10.00 to $12.00 per acre, exclusive of improvements, and that he had improved the farm by the expenditure of some $50,000.00 in barns, fences, tenant houses and in improvements on the residence. So far as the easement of the appellant is concerned, it undoubtedly took so much of appellees' land as was embraced within the space of the seven steel towers. As these towers were limited in size to a base of 20 feet square, the land actually occupied by them amounts to but a little more than a twentieth of an acre for the entire seven towers. It is true that the wires which are strung from tower to tower occupy some space in the air, but, as they must be maintained more than twenty feet from the ground, the possibility of their interference with the cultivation of the land beneath is very small. Although the company has the right to trim or remove all trees within fifty feet of the center line of the transmission line which interfere with the construction, operation or maintenance of that line, it is shown in this record that there were but four or five trees necessary to be cut and only one trimmed. The line does not run through any woodland or orchard, and, as the trees which may be trimmed or cut are only such as may interfere with the construction or maintenance of the line, it is obvious that such a burden on the one hundred foot strip is not a very onerous one. The easement taken provides that the landowner may not erect any building within a space of twenty-five feet on either side of the transmission line, and, as such line has a breadth of twenty-five feet this means that within a strip seventy-five feet wide the landowner is precluded from erecting any building. This is a burden. But inasmuch as it is not shown that any part of this seventy-

five foot strip is peculiarly suitable for building pur-
poses, and as it is shown that no building is now on that
seventy-five foot strip, the prohibition against erecting
any buildings thereon, while a matter that should be
taken into consideration, is not one for which very heavy
damages should be expected in the state of this record.
Lastly, the appellant has the right of patrol over a strip
twelve and one-half feet on either side of the center line
of the transmission line.  The judgment provides, how-
ever, that any damage caused by the appellant in exercis-
ing this right of patrol shall be paid for at the time such
damage is done.  With the exception of these burdens,
the landowner retains all of the land not actually occu-
pied by the towers of the appellant, and can use the same
to any extent he wishes in so far as such use will not in-
terfere with any of the rights taken by the appellant in
this case, which, in effect, means that he may cultivate
it or graze it as much as he wishes.  The line runs
through the appellees' farm 5,821½ feet.  Had the ap-
pellant taken a strip 25 feet wide in fee, its entire line
would have used only 3.43 acres.  Had it taken a strip
100 feet wide, the maximum width over which it has any
rights, it would have used only a little in excess of 13
acres.  The 3.43 acres, valued at the highest value found
in this record of $200.00 an acre (being the value Wood-
ard put on his land), would come to but $700.00.  At the
average figure of the rest of Woodard's witnesses of
$140.00 an acre, they would come to less than $490.00.
The 13 acres at the same figure would come to a little in
excess of $1,800.00.  But it must be remembered that
neither the 3.43 acres nor the 13 acres were all taken.
Excepting the space occupied by the towers, amounting
to a little more than one-twentieth of an acre, the ap-
pellees still have the right of use and occupancy of all
this land, except so far as such rights are curtailed by
the prohibition against the erection of buildings and by
the right of appellant to cut or trim trees.  In the light
of such facts, and in view of the value per acre put on
this property by appellee's own witnesses, it is manifest
that the verdict for $1,500.00 on account of the land taken
or burdened by the easement is excessive.

So far as the amount awarded for the diminution in
value of the remainder of appellees' land is concerned,
we must consider the evidence in this case in the light
of what this court said in its response to the petition for

rehearing in the case of L. & N. v. Burnam, 214 Ky. 736, 284 S. W. 391, at 396.  We there pointed out that, although the court and jury should take into consideration the opinions of witnesses as to values, such opinions should be tested by the facts on which the witnesses based those opinions, and if the opinions are based on facts which are recognized to be more or less speculative and remote, and as well somewhat fanciful, little, if any, weight need be given them, and they may be in large measure ignored.  As said in that opinion:

"If it can be said, as was done in the Chambers case and other like ones, *supra,* where the testimony related to physical facts or actual occurrences, that the court would be authorized, in its endeavor to administer justice, to decline to accept that testimony at its full face value, then it would seem to follow that the same authority would exist to likewise question the more or less fanciful figures which have for their foundation only the opinions of the witnesses founded as above stated. . . .  While this court may not take judicial notice of the value of land as it is located, and must and will accept the opinions of witnesses showing themselves to be qualified to testify as to such value, still it may not shut its eyes to the resulting damage to land not appropriated, in light of the facts bearing upon such diminution.  In such case it is placed in the same position as the witnesses who based their opinions upon the same facts."

With these observations in mind, we find that the witnesses for appellant placed the total damage done appellees not only for the diminution in the remainder of the land but also for the land taken or burdened by appellant's easement at not in excess of $1,200.00; but just how this was apportioned is not quite clear from their testimony.  The witnesses for the appellees outside of Bonta and Woodard himself run the resulting damages up as high as $12,000.00.  Woodard and Bonta placed the figure as high as $30,000.00.  When cross-examined, however, appellees' witnesses admitted that their estimation of the damages was in large measure based on the fear the witness had of possible danger to persons arising out of the construction and maintenance of the

line.  They did not show that this fear was founded on experience, or was reasonable, or was based on the knowledge of how these lines were constructed and maintained, as we have seen above is essential to cause diminution in value brought about by apprehension of danger to be a factor to be considered by the jury in awarding compensation.  Such fear as these witnesses testified about was that ill-defined, speculative and unreasonable fear which we condemned.  Further, these witnesses did not show that this fear, had it been of the proper kind, was so broad that it affected the market value of the property. They testified only that, in their judgment, the land was depreciated in value because of the fear *such witnesses* entertained.  Woodard testified that nine-tenths of his estimate of resulting damages of $30,000.00 were attributable to the fear *he* entertained of danger to himself and family arising out of the construction and maintenance of the line.  He showed no reasonable basis for such fear nor that such fear affected the market value of his property.  Eliminating the part due to fear, we have left out of Woodard's estimate but $3,000.00 for the other elements of damage and yet the jury awarded him $8,500.00.  It may be quite true that the market value of appellees' remaining land has been diminished, by reason of appellant's easement, because of the fact that there is an intrusion on the privacy of appellees' home due to appellant's right of patrol; because of the destruction, in part, of the beauty of appellees' residence on account of the erection of the two towers near to the front of that residence; because of the crossing by the transmission line of appellees' telephone wires, which run from their home to the barn; because of the inconvenience of cultivating the whole farm on account of the necessity of cultivating around these towers, and, perhaps, because of other facts.  But in the light of the testimony in this record which shows that the large estimates of damage given by appellees' witnesses were based almost, if not entirely, on the element of fear not allowable, and that appellee himself did not put an estimate of resulting damages beyond a third of that allowed him by the jury, if the element of fear be eliminated, it is manifest that with that element eliminated, as it should have been, the verdict of $8,500.00 can not stand.  It results, therefore, that appellant is correct in its contention that the verdict in this case on both elements is grossly excessive.

(e)   Lastly, it is claimed that the trial court erred in disallowing appellant interest on the difference between the county court and circuit court judgments from the date the appellees were paid the amount of the county court judgment by the appellant.   Of course, in view of the fact that another trial of this cause must be had in which the evidence may possibly put a different complexion upon the facts involved, we cannot give any directions about the specific interest here involved.  But we can say that, if on the next trial the circuit court judgment is less than that of the county court judgment, appellant should be allowed interest on the difference from the date of the payment by it to the appellee of the amount of the county court judgment.   In Albers v. Norton Co. 147 Ky. 751, 145 S. W. 757, on rehearing of the original opinion found in 147 Ky. 187, 144 S. W. 8, we held that where money is paid into court and withdrawn by a party who retains and uses it as his own, but who later is determined not to be entitled to it, such party is chargeable with interest on such sum.   *A fortiori* should this be the rule where in condemnation proceedings the amount of a county court judgment is paid directly to the landowner, which amount is reduced on appeal and a recovery over for the difference awarded against such landowner.   The fact that the money did not take its course through the court cannot affect the legal principle.   See also Cummings v. Bradford, 15 Ky. L. R. 155, 22 S. W. 548.   In this case appellee has had the benefit of the use of the amount of the county court judgment, and, if it turns out that he was not entitled to a portion of it, he must, under the underlying principle of the Albers case *supra,* pay interest on such portion.

For the reasons hereinbefore set out on the original appeal, the judgment in this case is reversed, with instructions to grant appellant a new trial in conformity to this opinion.

Whole court sitting.