## Commonwealth v. Combs et al.

(Decided May 24, 1932.)

H. C. JOHNSON, County Attorney, and D. G. BOLEYN for appellant.

F. J. EVERSOLE for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Reversing.

This is the second appearance of this case in this court. See 229 Ky. 627, 17 S. W. (2d) 748. The state highway commission of Kentucky, in accordance with section 4356t-7, Ky. Stats., on April 26, 1928, instituted, in the county court of Perry county, Ky., condemnation proceedings to condemn for highway purposes .871 of an acre of land owned by A. B. Combs, Alice Davis, and others, situated in Perry county,

Ky. Commissioners were appointed by the county court to assess the compensation which the owners were entitled to receive by reason of the taking of the land. The amounts assessed by the commissioners of the county were $1,000 for the value of the land taken and $600 resulting damage to the remainder of the tract. A. B. Combs, Ollie Combs, Alice Davis, and Charlie Davis filed in the county court exceptions to that part of the commissioner's report allowing to them $1,000 as the value of the land taken and $600 as damage resulting to the remainder of the tract. In their exceptions they fixed the market value of the land taken at $7,000 and the resulting damage to the remainder at $3,000. They did not, in their exceptions, assert or claim any damage covering any item other than the two reported by the commissioners. On a trial of the exceptions by a jury in the county court, the damages were assessed by it at $2,633. On an appeal from the judgment of the county court to the circuit court, on a trial by a jury, they were assessed at $7,500. On an appeal to this court the judgment of the circuit court was reversed because of the admission of incompetent evidence and excessive damages. The incompetent testimony chiefly considered in our former opinion related to the amount realized by the defendant A. B. Combs from a portion of the farm sold by him several years prior to the trial and the prices which he claimed he had been offered some years prior to the trial for other parcels of land, and to the amounts paid to other landowners for the right of way for a road over their land. It was our conclusion that such evidence was incompetent, and the appellant's objection thereto should have been sustained.

Relating thereto, we used this language:

"If it should be conceded that testimony of that character might, under certain conditions be competent for what it was worth, we are clearly convinced that it was not so under the facts of this case. The sale of the lots was made under conditions entirely different from those existing at the time of this trial in the circuit court, or at the time of filing this action in the county court. The strip of land sought to be condemned herein was much more removed from the valuable territory of the village than were the lots involved in the complained of testimony, and the conditions affecting their value were much more favorable to its enactment than obtained at

the time of the filing of this action with reference to the involved strip and consequential damages for its taking. Doubtless the pioneers, including defendants, in the launching of the village and giving it a place in Kentucky's geography, possessed exaggerated dreams of its future outcome, and because thereof defendants were the recipients of the evident boom prices that prevailed for supposed eligible and desirable lots. There was no proof of a convincing nature that the village had grown in recent years, or that the conditions were such that it was reasonably probable that it would ever do so, and it is obviously certain that such testimony had a prejudicial effect on the minds of the jurors. It is a well-known fact of such universal prevalence as to entitle us to take judicial notice of it that under the circumstances and conditions prevailing at the time of the sale of the lots by defendants their price is generally doubled, trebled, and sometimes quadrupled because of their supposed advantageous location, and that the same character of property and not exceeding a block distant would command much less price.

"The prices that defendants had been offered for eligible town sites either for residences or business locations possessed the same demerits and the additional one that its probative value is so remote as to render it incompetent. The offer may not have been genuine, or may have been made by one who was financially unable to perform the terms of his offer, if accepted, and other similar contingencies, equally potent, might exist, establishing the irrelevancy of such testimony. Moreover, the offeree might be induced to reject the offer, not because of inadquacy of submitted prices, but for other reasons, sentimental or otherwise, and which furnishes additional grounds for the rejection of that character of testimony, and clearly so in the absence of other proof in the case eliminating the objections pointed. Indeed in this case A. B. Combs gave a sentimental reason as to why he did not accept the offered price for some lots, the amount of which he was permitted to state to the jury over plaintiff's objection and exceptions. In discussing the same character of testimony, the text in Jones on Evidence, vol. 1, sec. 16, page 888, says: 'Clearly evidence should not be received to prove what offers

have been made to sell or what prices have been asked or refused.' In note 28 to that text cases supporting it from many courts of the country, both state and federal are cited, with none to the contrary. We therefore conclude that under the conditions of this record, as presented to us, all the testimony complained of under subdivision (a) of this ground was improperly admitted, and plaintiff's objections thereto should have been sustained.''

See City of Hazard v. Eversole, 237 Ky. 242, 35 S. W. (2d) 313; West Ky. Coal Co. v. Dyer, 161 Ky. 407, 170 S. W. 967.

On a return of the case to the circuit court, instead of again offering the testimony of A. B. Combs which had been introduced on the former trial and which was held incompetent by this court, the appellees offered and the court permitted the jury to hear the testimony of Crawford relating to prices he had paid for two town lots years before the trial, and again permitted, over the objections of appellant, A. B. Combs to testify that he had been offered $4,000 for an acre of land, the opinion of this court to the contrary, notwithstanding. He was also permitted to testify that he had donated to the county, on account of the land having been taken by the appellant for road purpose, other land on which a county road was constructed, and that the same was of the value of $300.

The major difference between the evidence discussed in our former opinion and that admitted on the last trial is, there A. B. Combs was permitted to relate the amount he realized from the sale of certain town lots, and here N. C. Crawford was permitted to relate the amounts he had paid for town lots in or near the village of Dolan. The statement of A. B. Combs as to the $4,000 offer for the acre is identical with his testimony on the first trial. While many of the questions which elicited such incompetent evidence were propounded to the witness by the court himself, yet the appellees acquiesced therein, and they may not now avail themselves of such palpable disregard of the former opinion of this court in this respect.

The former opinion of this court holding such evidence incompetent, whether right or wrong, is binding alike on all parties and the courts. Vanhoose v. C. & O. R. R. Co., 214 Ky. 594, 283 S. W. 953; Robinson v. C. & O.

R. R. Co., 227 Ky. 458, 13 S. W. (2d) 500; Culton v. Napier, 242 Ky. 683, 47 S. W. (2d) 519. The trial court after admitting such incompetent evidence, attempted to correct his error by an admonition to the jury. The law of the case as stated in our former opinion in relation to this particular type and character of evidence may not be avoided by such method of procedure. The failure of the appellees and the court, over the objection of the appellant, to try the case consistently with the former opinion, is of itself, a reversible error. It was the duty of the court not to admit such evidence, and we are prepared to say that its admission should not be approved by this court, notwithstanding an admonition in regard to such evidence was given to the jury. On another trial, if one is had in this case, the court will comply with the opinion in this regard.

The testimony of A. B. Combs relating to his donation to the county of land for road purpose of the value of $300 on account of the appellant's taking of the strip of land in controversy should not have been admitted.

As a part of his admonition to the jury relative to the incompetent evidence heard by the jury, the court used this language: ''I want to impress upon the jury, you are trying this case and you will arrive at the fair cash value of this property . . . what it was worth in 1926 or 1927 and back of that time.'' This admonition was improper. The value of the land in 1926 or 1927 and back of that time was not in issue. An error was committed by the court in his use of this language to the jury, which cannot be considered as wholly corrected by the written instructions given to it, for they contradicted the language used in the court's admonition and left the jury to choose between the two.

In their exceptions to the commissioner's report, the appellees made no claim for the item of fencing, to which the evidence and the written instructions were directed. The evidence should be confined to the two items presented by the exceptions to the commissioner's report, namely: (a) The market value of the land taken, and (b) the diminution of the market value of the remainder of the tract. The appellees are without right to claim items of damages in the circuit court which were not presented by their exceptions in the county court. The court permitted the appellees to state the number of fruit trees on the strip of land taken by the appellant,

and the value thereof. While they were entitled to the value of the trees thereon as an incident to the land actually taken for road purpose, at the time it was taken, their value, being merely an incident to the market value of the land so taken, should not be separated from its market value, by the instructions of the court. The court permitted the appellee to testify as to the effect the taking of the strip of land for road purposes had on other fruit trees and the garden subsequently grown by him on the remaining land contiguous to that which was taken. Such items of damage are too speculative to be estimated with reasonable certainty, and the testimony relating thereto should not have been admitted. In Broadway Coal Mining Co. v. Smith, 136 Ky. 725, 125 S. W. 157, 26 L. R. A. (N. S.) 565, it was stated that consequential or presumptive damages to the land not taken for the highway were too speculative to be estimated with reasonable certainty, and that the submission of the question would only mislead the jury, and an instruction thereon should not be given, even if such damages should otherwise be considered. On the authority of that case, the instruction concerning consequential damages to the remainder of the land will not be given. Since the judgment must be reversed because of the admission of incompetent evidence and the other errors which we have indicated, we deem it our duty to prepare the instructions which will be given should another trial be had. In that event, the court will give the following instructions:

"The jury will find for the defendants such sum as you may believe from the evidence represents the fair and reasonable cash value of the .871 of an acre of the land taken as of date June 18, 1928, considering it in relation to the entire tract of which it was a part, and also such other direct damage, if any, as you may believe from the evidence directly resulted to the remainder of the tract by reason of the situation in which it was placed by the taking of such fraction of an acre. But your finding under this instruction should not exceed in all, the amount which you may believe from the evidence was the difference on that date between the market value of the entire tract of land immediately before and the market value of the remainder immediately after' the taking of said fraction of an acre. You will'

exclude from both estimates, any enhancements, if any, in the valuation of the remainder by reason of the construction and use of the highway.

"No. 2. The market value is the price which it will bring when it is offered for sale by one who desires to sell, but is not compelled to do so, and is bought by one who desires to purchase, but is not compelled to have it.

"No. 3. You will find and state separately in your verdict the amount awarded for the land taken from the damage awarded for the remainder of the tract, if any.

"No. 4. The entire panel of 12 jurors must agree on the verdict, one of you signing it as foreman."

The question propounded to the witnesses eliciting their opinions of both the market value of the land taken, and the remainder of the tract were improperly formed. The questions, and the opinions of the witness, should be confined to the market value, if and when offered for sale by one who desires to sell, but is not compelled to do so, and if and when bought by one who desires to purchase, but is not compelled to have it. Unless the opinion of the witness is so elicited and expressed on this theory, the jury cannot determine upon what basis the opinion may have been formed.

The testimony that the market value of the land taken was a certain sum, or that the remainder of it was of the value of a certain amount, or that the land before the strip was taken and immediately after it was taken for road purpose, was of the value of a definite amount, without a description of the land, its improvements, its location, or the facts upon which the opinion was based, clearly falls within the rule that opinions of witnesses without facts to support them or based on facts more or less speculative or fanciful and to a large measure should be ignored. Kentucky Hydro-Elec. Co. v. Woodard, 216 Ky. 618, 287 S. W. 985; Warfield Natural Gas Co. v. Laferty, 232 Ky. 248, 22 S. W. (2d) 611; Big Sandy & Ky. River R. R. Co. v. Stafford, 207 Ky. 272, 268 S. W. 1071; City of Hazard v. Eversole, 237 Ky. 242, 35 S. W. (2d) 313. In Warfield Natural Gas Co. v. Laferty the rule was stated in this language: "We are committed to the rule that opinions as to values [of land] without facts to support them, or based on facts that are more

or less speculative or remote, as well as somewhat fanciful, are of little value, and may be in a large measure ignored." This rule was again approved in City of Hazard v. Eversole, supra.

Instruction No. 1, as given by the trial court, authorized the jury to assess damage "for such additional fencing and other improvements, if any, as may be necessary to the reasonable enjoyment of the remainder of the tract by reason of the taking of a fraction of an acre."

The appellees should be confined in the introduction of the testimony to the items of damage set forth in their exceptions. Their exceptions did not include the cost of fencing or "other improvements" which the instructions authorized the jury to consider when estimating and fixing the damage to the remainder of the tract.

Besides the words "other improvements" are too indefinite and uncertain, and their use in the instruction left it to the jury to speculate on imaginary "improvements."

Instruction No. 2 improperly authorized the jury to find substantially the same damage, in part, which instruction No. 1 directed it to estimate and find for the appellees. Instruction No. 3 authorized the jury to offset the benefits against the disadvantages resulting from the construction of the road. The giving of such an instruction was condemned in Broadway Coal Mining Co. v. Smith, supra.

It is insisted by the appellant that the amount assessed by the jury is excessive. The question of excessive damage was considered in our former opinion in this language:

"In this case the surface exposure of the strip taken contains only .871 of an acre; the remaining portion being covered by the waters of the Kentucky river out to the boundary line of defendants' tract. Considering the portion covered by water as of equal value to that which is not so, and eliminating all questions of the proper consequential damage, defendants realized by the verdict at the rate of $5,313 and some cents per acre (or a total valuation of $1,063,000 for defendants' whole farm, which, as we have seen, they assessed for taxation at only $5,-000) or 212.63 times the value fixed by defendants for assessment purposes."

On the basis of the calculation in our former opinion it will be observed that appellees' whole farm at the valuation fixed by the verdict of the jury would be more than $496,062, whereas he assessed it for taxation at only $5,000. In the language of our former opinion, "a mere statement of these facts is sufficient in and of themselves to authorize any court to conclude that the verdict is grossly excessive." It cannot be doubted that the verdict of the jury is largely attributable to the incompetent evidence, the errors of the court, and improper instructions. It cannot be accounted for on any other hypothesis.

Wherefore the judgment is reversed for proceedings consistent with this opinion as well as our former opinion, with admonition to the court and parties to conform thereto.