## Norfolk & W. Ry. Co. v. McCoy.

(Decided June 23, 1933.)

W. R. McCOY, W. K. COWDEN, HOLT & HOLT and F. M. RIVINUS for appellant.

JASPER H. PREECE and W. H. D. PREECE for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Reversing.

The appeal is from a judgment of $1,787.08 for damages to the land of the appellee caused by the diversion of Tug fork of Big Sandy river. The farm lies on the inside of a sharp horseshoe bend. Across the river in West Virginia the appellant in 1925 made a 2,800-foot fill at the side of a cliff for a new second track. The section of the fill affecting the river and appellee's property is about 400 feet long and 70 feet high. Its base projected into the river. According to some of the witnesses, some of it extended half-way across the channel. In 1930 the plaintiff brought this suit charging that his land had been damaged by reason of the change in the channel and the diversion of the current.

The evidence pertaining to the area and the topography of plaintiff's land is not very satisfactory. It appears that in 1910 he acquired 25 acres and later on 23 acres of what is known in the record as the "heirship land." During the pendency of the suit he purchased an outstanding one-fourth interest in the latter parcel and sold 15 acres off "the lower end." However, there is reference in the record to his property as containing 40 acres. The defendant denied plaintiff's title and his right to maintain the suit. The question was raised as to any right of recovery because the work had been done under a permit issued by the War Department of the United States government, the river being a navigable stream. The allegations of damage were traversed. These grounds of defense are presented on this appeal together with some claimed errors in practice.

It is submitted that it was necessary for the plaintiff to show title back to the commonwealth or that he had been in adverse possession a sufficient length of time to acquire title. Putting aside the first point, we

are satisfied with the evidence showing the plaintiff had been in adverse possession a sufficient length of time. It was not necessary that he should have lived upon the place uninterruptedly this period of time as the appellant seems to think. It was sufficient that he was in possession through tenants when not actually living there himself. The defendant as a trespasser was not in position to attack the title to so much of the land as plaintiff owned, and, while the issue as to damages to all that he had when the suit was filed was submitted to the jury, the court abated so much of the judgment as represented, the interest in the land which the plaintiff acquired after the damage was committed.

The permit issued by the government engineers authorizing a change in the channel of the river specifically provided:

"It is to be understood that this instrument does not give any property rights either in real estate or material, or any conclusive privileges; and that it does not authorize any injury to private property or invasion of private rights, or any infringement of Federal, State or local laws or regulations nor does it obviate the necessity of obtaining State assent to the work authorized. It merely expresses the assent of the Federal government so far as it concerns the public rights of navigation [See Cummings v. Chicago, 188 U. S. 410, 23 S. Ct. 472, 47 L. Ed. 525]."

It is obvious that no right to take the plaintiff's land by damaging it in the manner shown was acquired under this permit, conceding for the purposes of argument that such power could exist in the governmental department. The authorities cited by appellant refer to the title of riparian owners of submerged lands as being subordinate to the public right of navigation, and are not applicable here.

Complaint is registered against the admission of the opinions of value given by several witnesses introduced by the plaintiff upon the ground that they did not show knowledge of the conditions or of the values. All of these witnesses stated that they knew the land and had known it for many years. It was not required that they should testify to knowledge of its exact metes and bounds. They were open to cross-examination for a

test of their knowledge of the property. We also think they showed sufficient qualifications to express an opinion as to the values by reason of what they had seen and known with respect to the action of the waters, caused, as it was believed, by the diversion of the stream.

But the court erred in ruling that the plaintiff need not answer defendant's questions as to what he had received for the 15 acres sold off the tract during the pendency of the case. While the location of this parcel in its relation to the fill and to that part of the farm claimed to have been damaged was not shown other than that it was at the lower end, what the plaintiff had been willing to accept for it is a pretty good criterion of its value at a fair voluntary sale. Of course, its character and relation to the rest of the land was open for proof and comparative purposes.

The instructions seem to be correct. The appellant is not in position to raise any question about what the court should have given but did not, for it offered no instructions. Under our practice, it is not sufficient for a party merely to move the court to give the "whole law of the case" as was done here. If he desires an instruction upon any point, he must offer one upon it, and, failing to do so, will not be heard to complain.

The most serious question presented is that the damages awarded of $2,000, less the abatement of $212.92 as representing the land acquired after the commencement of the action, are excessive. As suggested above, the description of the property is unsatisfactory. As we gather from it there is a narrow flat with willow trees at the water's edge and back of this a step and a bench. The evidence of the plaintiff is that the current of the stream was changed by the fill from the West Virginia to the Kentucky side in the bend of the river and that it had washed out some of these willows and was cutting a channel back of them. But it was only a few feet wide. According to the evidence there was a continuing erosion, whereas formerly there were accretions. Of course, it is possible only to estimate how far this erosion will eventually go. So far, over a period of five or six years it has taken but little of the land. The defendant's evidence greatly minimizes this effect and damage. The plaintiff and several witnesses testified that the land

194

was worth from $5,000 to $6,000 before the fill was built and $2,000 afterward, making as estimate of the diminution of the value from $3,000 to $4,000 in a tract of either 25 or 40 acres. We are unable to tell whether the witnesses had in mind the tract before or after the 15 acres were sold. Over against this evidence that the land was worth $20 an acre both before and after the building of the fill. However, one of the witnesses who had been buying lands in the vicinity for a coal company admitted having offered $4,000 for the entire property, but it included the improvements.

As stated in Warfield Natural Gas Company v. Lafferty, 232 Ky. 248, 22 S. W. (2d) 611, while the question of damages to land is for the jury and its verdict will not be set aside as excessive when supported by substantial evidence, ''we are committed to the rule that opinions as to values without facts to support them, or based on facts that are more or less speculative or remote, as well as somewhat fanciful, are of little value, and may be in a large measure ignored.'' The plaintiff had listed his entire property for taxation at $954. He objected to telling what he had received for 15 acres recently sold, but stated he had paid $150 for one-fourth interest in the 23 acres acquired during the pendency of the suit. Of course, being a fractional interest in the land, he may have paid more than he would have paid proportionately for the whole, or conversely the seller may have taken less for the fractional interest in order to be rid of it than he would have accepted had he been selling the entire estate in the parcel. It is impossible to tell from this record how much of appellant's land has been affected, but certainly it could not be as much as one acre in the aggregate. Plaintiff failed to show with any degree of definiteness how far the erosion may be reasonably expected to continue. Considering all the conditions disclosed, even by the plaintiff's witnesses alone, we cannot escape the conclusion that the verdict is excessive, the extravagant estimates of damage to the contrary notwithstanding. See Elkhorn & Beaver Valley Railway Company v. Hagans, 208 Ky. 497, 271 S. W. 587; Chesapeake & O. Ry. Co. v. Friend, 227 Ky. 676, 13 S. W. (2d) 1021; Commonwealth v. Combs, 244 Ky. 204, 50 S. W. (2d) 497.

Wherefore the judgment is reversed.