# Norfolk & W. Ry. Co. v. Fitch.

(Decided June 23, 1933.)

W. R. McCOY, W. K. COWDEN, HOLT & HOLT and F. M. RIVINUS for appellant.

JASPER H. PREECE and W. H. D. PREECE for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Reversing.

This is a companion case to Norfolk & Western Railway Company v. McCoy, 250 Ky. 190, — S. W. (2d) — , decided today.

The appellee's land lies adjacent to and below McCoy's. It is not in the bend of the river, and is nearly a half mile from the fill described in the other opinion.

The farm contains about 56 acres, of which about 6 acres is level; the rest being hill land. The description is general, but the railway company shows that it fronts the river 2,040 feet. The stream flows straight for 1,000 feet below the obstruction before reaching the upper line of Fitch's land. It continues along the land practically straight and then has a broad curve. It is very difficult to see how the railroad fill could in any way have affected this property. Whatever deflection there was in the current would seem to have been a natural one or perhaps caused by a wing wall erected by the federal government on the West Virginia side of the river. Nevertheless, there is evidence of the washing and eroding of plaintiff's land, but some of it seems rather romantic, certainly the conclusions as to the cause are extravagant. In view of the necessity of reversing the judgment upon another ground, we reserve the question whether there was evidence, as distinguished from testimony, sufficient to take the case to the jury.

It is hard to understand just what extent the land has been damaged or changed. Plaintiff said his land had been cut out 8 or 10 feet back of the willows on the bank. The record is indefinite as to what acreage has been affected; but it is sufficient to disclose that it was not much. As in the McCoy Case, the unanimity of the witnesses is suggestive, and it may be but a coincidence, that the values fixed here are exactly the same as those given in that case. Four of the witnesses put the original value of this property at $5,000 and two at $4,000. One of the $5,000 men said it was worth only $1,000 after the construction of the fill. The other five witness valued it then at $2,000. The average estimate of diminution of this property was $2,833. The verdict of the jury was for $2,000. Now the owner had placed the valuation on his entire farm for the past five years at an average of $700. The board of tax supervisors had raised the value in 1928 from $644 to $680, and in 1930 from $644 to $673. Taking the plaintiff's statement that his land had been cut back not more than 10 feet, and using the entire water's edge of 2,040 feet as being the length of the cut, there was a loss of less than one-half acre. On the basis of the verdict, of $4,000 an acre, the entire farm is worth nearly a quarter of a million dollars. Of course, this is hardly fair, for the

matter of continuing erosion must have been taken into consideration by the jury under the instructions. It is highly improbable that the entire six acres of bottom land will be thus lost, but should it be, under the verdict the owner would have received more than $330 an acre for it and enjoyed its use during the course of the period. We think it is obvious that the verdict is grossly excessive and that the judgment should be set aside on that account.

Other points raised on this appeal are disposed of by the opinion in the McCoy Case.

Judgment reversed.