## Norfolk & W. Ry. Co. v. McCoy.
## Same v. Fitch.

(Decided Dec. 21, 1934.)

W. R. McCOY, F. M. RIVINUS, and HOMER E. HOLT, HOLT & HOLT, and W. K. COWDEN for appellant.

JASPER H. PREECE and W. H. D. PREECE for appellees.

OPINION OF THE COURT BY JUDGE RICHARDSON—Reversing.

These actions are again presented to this court. Norfolk & W. Ry. Co. v. McCoy, 250 Ky. 190, 61 S. W. (2d) 1080, 1082; Norfolk & W. Ry. Co. v. Fitch, 250 Ky. 180, 61 S. W. (2d) 1082.

In their brief, McCoy and Fitch make these statements.

"A concise and complete statement of these cases was made in briefs for appellees on first appeal and the opinions of the court in reversing the said cases show that the court had a comprehensive understanding of the issues involved and the respective contentions of the parties hereto, together with their rights and duties with respect to each other. * * * We submit that on the former trial the evidence was not clear as to the character of appellees' land, the topography and formation thereof, the amount of bottom and other land, the comparative value thereof, and the value of improvements, etc., while on this trial all of these details are made plain and understandable. * * * In other words, an examination of the evidence on these questions will show that a real and substantial basis was laid, not only for the verdict of the jury, but for the enlightenment of this court in passing upon said verdicts."

True it is, witnesses testified on the last trial who were not introduced at the first, but their testimony is merely accumulative, and in no sense additional or new evidence. Nor can the fact the jury viewed the land on the last trial be regarded as such evidence.

The facts established by the testimony of McCoy and Fitch and their witnesses and that of the railway company, it is conceded, are aptly and correctly stated in our former opinions. It is entirely unnecessary to repeat them in this opinion.

In our opinion in the Fitch Case we said:

"The farm contains about 56 acres, of which about 6 acres is level; the rest being hill land. * * * The stream flows straight for 1,000 feet below the obstruction [the fill] before reaching the upper line of Fitch's land. It continues along the land practically straight and then has a broad curve. It is very difficult to see how the railroad fill could in any way have affected this property. Whatever deflection there may be in the current would seem to have been a natural one. * * * Nevertheless, there is evidence of the washing and eroding of plaintiff's land, but some of it seems rather romantic, certainly the conclusions as to the cause are extravagant. In view of the necessity of reversing the judgment upon another ground, we reserve the question whether there was evidence, as distin-

guished from testimony, sufficient to take the case to the jury.''

Carefully viewing and diligently examining the evidence, we are thoroughly convinced the evidence entirely fails to establish with any degree of certainty greater than conjecture, surmise, and speculation that the railroad fill diverted Tug river, and thereby caused any damages to the land of Fitch, 1,000 feet below the fill.

True it is, Fitch and his witnesses testify the water from the river was diverted by the railroad fill erected in the river bed and his land was thereby damaged; but their testimony respecting this issue is at most merely their opinions without any facts upon which to base them. Considering the distance from the terminus of the fill to Fitch's land in connection with the fact that the water after it passes the fill flows straight for a distance of more than 1,000 feet before it reaches his land, and at high tides the water from the river overflowed his land before the fill was constructed, without some evidence based upon facts other than mere opinions of witnesses, establishing damages to his land by the diversion of the water by reason of the erection of the fill, it is plain the railway company was entitled to a peremptory instruction. The opinion of Fitch and those of his witnesses that the fill diverted the water more than 1,000 feet below its terminus, without a statement of the facts upon which they are based, have no probative value, and are insufficient upon which to base the verdict of the jury. Dossenbach et al. v. Reidhar's Ex'x et al., 245 Ky. 449, 53 S. W. (2d) 731, 733.

In Dossenbach et al. v. Reidhar's Ex'x et al., we said:

''The rule in this jurisdiction is that a case must be submitted to the jury if there is any evidence tending to sustain the cause of action upon which issue is joined. In determining that question, the court views the evidence in the aspect most favorable to the complaining party. * * * By the term 'evidence' is included the facts proven and the inferences reasonably deducible therefrom. But a decision may not be rested upon unreal or remote inferences. A pyramiding of inferences is not regarded as sound reasoning, and is not a permissible predicate for a conclusion. * * * And the proven facts and legiti-

mate inferences drawn therefrom must be something of substance and relevant consequence, carrying the quality of proof, and having fitness to induce conviction. * * * When the voluminous testimony is sifted not a scintilla of substance is found of sufficient probative value to take the case to the jury.''

These principles control Fitch's right to a recovery.

In our opinion in the McCoy Case, it was our conclusion:

''Considering all the conditions disclosed, even by the plaintiff's witnesses alone, we cannot escape the conclusion that the verdict is excessive, the extravagant estimates of damage to the contrary notwithstanding.''

The railway company now strenuously insists it is entitled to a peremptory instruction in the McCoy Case. With the evidence in behalf of McCoy, establishing slight damages to a small portion of his land in close proximity of the fill, as a direct result of its presence, we cannot concur in this insistence.

An earnest review of the testimony of McCoy and his witnesses, excluding that of the witnesses of the railway company, convinces us that the verdict of the jury is flagrantly against the evidence, and for this reason the judgment must be reversed.

It is easy to be seen that the witnesses' description of McCoy's damages as well as the value of his land, both before and since the construction of the fill, are extravagantly exaggerated. Commonwealth by State Highway Commission v. Combs, 229 Ky. 627, 17 S. W. (2d) 748; Id., 244 Ky. 204, 50 S. W. (2d) 497.

It is observed that the witnesses of McCoy and Fitch testified that before the railroad fill was constructed the McCoy land was made or built up by the operation of the water of the river, and that the accretion since the railroad fill was constructed had ceased. The manner of the questioning of the witnesses and their statements about the accretion were stressed in a way calculated to induce the jury to believe that, when fixing the damages sustained to his land by reason of the presence of the railroad fill, it was authorized to take into consideration the cessation of the accretion, since the construction of the fill.

36

The evidence relating to the accretion to McCoy's land, accruing from the operation of the water of the river before, and the cessation thereof after, the construction of the fill, doubtless induced the jury to consider the loss of the accretion to his land, when estimating his damages. Perhaps the jury included in fixing his damages what it regarded as the value to his land of the accretion, and this may account for the excessive damages awarded by its verdict.

On another trial, if one is had, the jury should be directed by an appropriate instruction not to consider as an element of damages the cessation of the accretion by reason of the fill.

It is shown that before the construction of the fill the water from Tug river, especially in high tides, overflowed the McCoy land. The railway company, simply because it constructed the fill, is only liable for the increased damages, if any, to the land, which directly and solely resulted from the railroad fill increasing the diversion of the water on to the land.

The argument is made that the witnesses who testified concerning the value of the land were not qualified to express an opinion. This question was presented on the former appeal, and our conclusion therein in this respect is the law of the case.

Complaint is made because of the manner of the selection of, and the permitting certain individuals to serve on, the jury. Since the case must be reversed, it is unnecessary to consider this complaint, for the ground thereof may not originate on another trial, if it should be had.

Wherefore the judgment is reversed for proceeding consistent with this opinion.