## Robinson, et al. v. Wells, et al.

(Decided March 16, 1911.)

### Appeal from Robertson Circuit Court.

1. Lands—Action to Quiet Title—Deeds—Title Bonds.—Plaintiffs asserting ownership of a creek to the middle thereof and to certain land on the eastern bank thereof, brought this action against defendants to restrain them from trespassing. Plaintiffs and defendants claim through a common grantor, who first conveyed to a grantor of the defendants the bed of the stream and to certain corners on the eastern bank of the creek. He then conveyed to a grantor of the plaintiffs by deed calling for the meanders of the stream. The deed to defendants' grantor described the land as running to certain corners of plaintiffs' land. Held that in the absence of the alleged title bond it can not be presumed that the common grantor had by the title bond previously

conveyed to plaintiffs' grantor and that such title bond called for the meanders of the creek. In such a case the question of title depends upon the deeds of record.

2. Riparian Ownership.—The rule that where a deed calls for the meanders of a non-navigable stream the grantor takes title to the thread of the stream, does not apply where the grantor has by deed of record previously conveyed the bed of the stream to another.

ROBERT BUCKLER and JOHN T. McCARTNEY for appellants.

HOLMES & ROSS and SAMUEL THROCKMORTON for appellees.

OPINION OF THE COURT BY WM. ROGERS CLAY, COMMISSIONER—Reversing.

On July 23, 1907, Anna Wells, Lena Wells, Luther Wells and others, claiming to be the joint owners of a certain tract of land in Robertson county, Kentucky, and lying on the waters of Johnson Fork of Licking River, a non-navigable stream, instituted an action against Frank Robinson and Sarah J. Robinson, his mother, to restrain them from destroying and defacing their landmarks and monuments on the western boundary of plaintiffs' land and from constructing fences on the east bank of Johnson Fork, and from otherwise trespassing upon the land. A similar suit was filed by Annie Wells against the same defendants to enjoin them from wrongfully and unlawfully entering upon the lands which she owned in her individual right. A similar suit was also filed by Elizabeth Wells against the same defendants and praying for similar relief. The defendants answered and denied the allegations of each petition. Thereafter plaintiffs filed their amended petitions in equity, wherein they asserted title to the land in controversy by adverse possession. Subsequently all three of these actions were consolidated and docketed under the name of Annie Wells, et al. v. Frank Robinson, et al. Thereafter the defendants filed an amended answer and counter-claim wherein they pleaded ownership of the land by title of record and also by adverse possession. They also pleaded that plaintiffs claimed title through Uriah Wells, who had accepted a certain stone on the east bank of Johnson Fork as the corner in making surveys of his and defendants' land, and that the line claimed by defendants to be the dividing line between him and plaintiffs had always been recognized by plaintiffs and those through whom they claimed as the divid-

ing line. Upon submission of the case the chancellor granted the relief prayed for by plaintiffs and adjudged that each of them, with respect to the particular land which she owned, had title to the bed of Johnson Fork of Licking River to the thread of the stream for the full length of the western boundary of her particular land. From this judgment the defendants have appealed.

While both plaintiffs and defendants asserted title by adverse possession, it is manifest that neither had such possession as would ripen into title. Each claimed to the division line, and the whole case depends upon where that line is located. Both plaintiffs and defendants have shown title from the Commonwealth, and also from a common grantor. For the purpose of determining where the division line is located, resort must be had to the record titles which are exhibited in the record.

The tracts of land owned by plaintiffs and defendants are embraced in a patent for 4,045 acres issued by the Commonwealth of Kentucky to Robert Johnson. Robert Johnson conveyed the lands owned by plaintiffs and defendants to David Irwin on August 29, 1805, by deed of record. David Irwin conveyed to David Gray and John Allison on December 30, 1805, by deed of record. David Gray conveyed to John Allison his undivided one-half interest in said land on August 25, 1806, by deed of record. John Allison conveyed the land now belonging to defendants to John Dea on December 13, 1806, by deed of record, and Dea in turn conveyed to John Throckmorton by deed of record dated January 23, 1807. By regular chain of conveyances from Throckmorton, defendants acquired title to their tract of land. Subsequently, on August 29, 1808, Johnson conveyed the lands now belonging to plaintiffs to Aaron Wells by deed of record. Aaron Wells' heirs conveyed to Uriah Wells by deed dated March 27, 1848. From this point on it is unnecessary to set forth plaintiffs' title.

The description both in the deed from John Allison to John Dea, of date December 13, 1806, and the deed from John Dea to John Throckmorton, of date January 22, 1807, through whom the defendants derive title, is as follows:

"Beginning at a white oak on a ridge standing near a large forked white oak and in the western boundary line of the said Robert Johnson tract; thence east forty poles to two gums and a hickory in Lawrence

Harrison's line; thence with the same south forty-five east ninety poles to two beeches on the east bank of Johnson Fork and a corner to Aaron Wells; thence down Johnson Fork on the east side thereon and binding thereon with its different meanders two hundred poles when reduced to a straight line to a sycamore and elm another corner of the said Wells, and in the southern boundary line of the said Robert Johnson tract; thence on a line of the same west twenty poles to three beeches a corner thereof; thence on another line north two hundred and fifty poles to the beginning, containing one hundred acres, be the same more or less."

In a subsequent deed from John Throckmorton and wife to Franklin Vimont, there is a call to a stone on the east bank of Johnson Fork; "thence down said creek with its meanders south thirty and one-half west forty-eight poles; thence south thirteen west thirty-five poles to an elm in Wells' stone fence." From this point on to the defendants the deeds vary but little in the description of the tract which defendants own.

The description in the deed from John Allison to Aaron Wells, through whom the plaintiffs claim, is as follows:

"Beginning at a sycamore and elm standing on the bank of Johnson Fork on the east side thereof, and on the line of the said 4,045 acres: thence up the creek with the meanders thereof two hundred poles when reduced to a straight line to two beech trees standing in the lower line of Harrison's survey; thence with the same south forty-five degrees east one hundred and two poles to two beeches and a sugar tree; thence leaving said line and running south twenty-three degrees west one hundred and twenty-two poles to three beeches and a hickory on a ridge and in the southern boundary line of the said Robert Johnson's 4,045 acre survey; thence on a line of the same west one hundred and five poles to the beginning, containing one hundred acres of land, together with all and singular the premises and appurtenances thereunto belonging or in anywise appertaining."

The description in the deed from Aaron Wells' heirs to Uriah Wells, dated March 27, 1845, is the same as that contained in the deed from John Allison to Aaron Wells.

From the foregoing conveyances it will be seen that the various deeds, through which defendants derive title,

describe the land as running to certain points on the
east side of Johnson Fork of Licking River. That being
true, defendants' title of record actually covers the land
in controversy, and is superior to that of plaintiffs.

But it is insisted by counsel for appellees that, when
Allison conveyed to Aaron Wells, their remote grantor,
he conveyed to him land bordering on Johnson Fork,
and necessarily granted to him title to the middle or
thread of that stream. It may be conceded to be the
general rule that a conveyance of land described as
running with the meanders of a non-navigable stream
(and in this state all rivers are non-navigable so far as
the doctrine of riparian ownership is concerned) carries
title to the middle or thread of the stream, unless there
be something in the grant to indicate a contrary intention.
(Berry v. Snyder, 3 Bush 266; Williamsburg Boom Co.
v. Smith, 84 Ky., 372.)

But the question still remains: Has this doctrine
any application to the facts of this case? Plaintiffs con-
cede that the defendants have a superior title of record
and that their remote grantor accepted his deed with
notice of the fact that Allison had previously conveyed
the bed of the stream to John Dea, defendants' remote
grantor. To overcome this, the claim that it may be
reasonably inferred from the fact that the Dea deed calls
for certain corners to Aaron Wells, and the further fact
that, on August 25, 1806, David Gray conveyed his
undivided one-half interest in the particular tract of
land which Allison had conveyed to Dea, describing it
by metes and bounds, "and also one other tract adjoin-
ing the same, containing one hundred acres conveyed by
said Allison to Aaron Wells." Allison prior to the con-
veyance to John Dea, had by title bond sold the one
hundred acres to Aaron Wells, and that John Dea had
notice of this fact. As a matter of fact, however, no
title bond is produced, nor is it shown that Allison had
actually conveyed to Aaron Wells, it being admitted that
no such conveyance is of record. If we may indulge the
presumption that Allison had conveyed by title bond to
Wells, we may with equal propriety indulge the pre-
sumption that the title bond contained provisions exclud-
ing the idea that there was a grant to Wells of the bed
of the stream. For aught we know Allison may have
contracted to sell to John Dea prior to the time he con-
tracted to sell to Wells; or, it may be that the contracts

were made about the same time, and that the surveyor surveyed both tracts at the same time and made the dividing line as indicated in the deeds. Furthermore, there was nothing in the description contained in the deed from Allison to Dea calling for certain corners to Aaron Wells that put Allison upon notice of the fact that, even if he had contracted to convey to Wells, the description in the title bond called for land running with the meanders of the stream. It only notified him of the fact that a certain man by the name of Aaron Wells had two corners on the eastern bank of the creek. Nor was there anything in the deed from Gray to Allison, referring to the fact that Allison had conveyed one hundred acres to Aaron Wells, to indicate to Dea that one of the calls of such conveyance, even if it had been made, was for the meanders of the creek. In other words, there was no notice to Dea that the bed of the stream had been previously conveyed, or contracted to be conveyed to Aaron Wells.

We, therefore, conclude that the question between the parties depended solely upon their titles of record. According to these titles, Allison had conveyed to John Dea, by deed of record, the entire bed of Johnson Fork and a portion of the eastern bank thereof about a year and a half prior to the time he conveyed to Aaron Wells, plaintiffs' remote grantor; and Aaron Wells accepted his deed with full notice of this fact. The rule, that where a deed calls for meanders of a non-navigable stream the grantee takes title to the thread of the stream, does not apply where the grantor had by deed of record previously conveyed the bed of the stream to another. Penrod v. Bruce, 22 Ky. Law Rep., 1697.

Our conclusion, then, is that the division line between plaintiffs and defendants is that fixed by the old deeds, and that plaintiffs have failed to show themselves entitled to the relief asked. Defendants, therefore, have the right to construct the fence along the line of the true boundary between their land and that of plaintiffs. In doing this, however, they will as they have agreed, afford those plaintiffs, who have no access to the creek at other points, reasonable access thereto.

Judgment reversed and cause remanded, with directions to enter a judgment in conformity with this opinion.