## City of Bloomfield v. Allen.

(Decided December 15, 1911.)

### Appeal from Nelson Circuit Court.

1. Sidewalk—Dedication Acceptance.—Where a portion of a property owners' lot has been set aside for a sidewalk and used by the traveling public for that purpose for a period of fifteen years, dedication by the owner and acceptance by the town will be conclusively presumed.

2. Sidewalk—Dedication—Acceptance.—Where a sidewalk has been used by the traveling public for a number of years, and the town by ordinance orders the construction of a brick pavement, and the property owner in response to the action of the town agrees to, and does construct a gravel sidewalk, such action on the part of the town and property owner will constitute a dedication and acceptance.

MORGAN YEWELL, C. F. ATKINSON and JOHN A. FULTON for appellant.

NAT. W. HALSTEAD, JOHN D. WICKLIFFE, KELLY & CHERRY for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, Commissioner—Reversing.

The town of Bloomfield, a city of the sixth class, through its board of trustees, passed an ordinance directing the building of a sidewalk according to certain specifications therein named, in front of the property of James A. Allen and others. Instead of complying with the ordinance, appellee Allen built a fence across the old sidewalk. Thereupon the town, by its board of trustees, directed that the town marshal remove the fence. This he did. The ordinance provided that, in case any property holder should fail to build the sidewalk as required by the ordinance, the town marshal should proceed to build the same.

Claiming that the ground upon which the town was proceeding to build a sidewalk was his private prop-

erty, appellee brought this action to restrain the town and its officers from proceeding in the matter. The town defended on the ground that the sidewalk had been dedicated to the public use, and the dedication accepted by the town. A temporary injunction was granted, and, upon final hearing, the injunction was made permanent. From that judgment the town of Bloomfield appeals.

It appears from the record that, in the year 1881, the Cumberland and Ohio Railroad completed a branch road to the town of Bloomfield. This branch road was afterwards acquired by the Louisville & Nashville Railroad Company, and is now owned and operated by it. The railroad tracks terminated with the Bloomfield and Fairfield turnpike. The depot is situated about four hundred yards from this pike. The railroad company owns a right of way, sixty-six feet in width, extending from the depot to the pike. The western half of this right of way is used by the road for its tracks and switches. The eastern half is used by the public in going to and from the depot. While there was formerly another route to the depot, which passed over Simpson's Creek, a majority of the public no longer use this route, because at certain times in the year it is impassable. The record shows that, perhaps, ninety per cent of the public travel is along the railroad right of way, extending from the Bloomfield and Fairfield turnpike.

Appellee owns two lots which abut on the right of way. One of these lots has a store house on it, and fronts on the pike. Next to this lot is the property of the colored Odd Fellows. Just south of the property of the colored Odd Fellows is the other lot owned by appellee. A portion of these lots and the other lots abutting on the right of way has been used by the traveling public, in going to and from the depot, for twenty-seven or twenty-eight years.

The evidence for appellee is to the effect that he never dedicated that part of his own lot in controversy to the public use. On the contrary, he permitted a man by the name of Huston, who had bought a lot in that vicinity, to build along the lot in question a sidewalk composed of ties and cinders. In doing this, Huston asked his permission and also stated to his vendee that he had made and used the sidewalk merely by the permis-

sion of appellee. Several former marshals and other officers of the town of Bloomfield testified that the town had never exercised any control over either that portion of the right of way used by the traveling public, or that portion of the abutting lots used by pedestrians; on the contrary, they did not claim any control over either.

The evidence for appellant is to the effect that, ever since the railroad opened up its right of way to the traveling public, and the other route to the depot was practically abandoned, the public, in large numbers, have used the sidewalk. This use has continued for more than twenty-five years. Prior to 1890 the Davis and Thomas lots originally extended across the railroad right of way, and the then owners built a fence near the east line of the right of way to enclose their lots. At that time the traveling public passed over the Allen lot at the south end, then over the Odd Fellows' lot, then over the vacant lot in controversy along the east edge of the right of way to the Thomas lot; thence around the ends of the Thomas and Davis lots to the depot. When Huston bought the Davis lot, in 1890, he moved his west fence back the full width of the sidewalk. At that time the public was crossing the west end of the Davis lot, the fence being down at each side, leaving the sidewalk clear from the pike to the depot grounds. The sidewalk is now located as it existed over the lots of appellees and the colored Odd Fellows' lot for nearly thirty years, and over the lots of Huston (now Gore) and Davis (now Merrifield) for over sixteen years. The two latter have not only dedicated the sidewalks in front of their lots, but have made gravel walks with substantial curbing. In the year 1906 the colored Odd Fellows' lodge built a brick pavement in front of their lot, in obedience to an ordinance of the town council. At the south end of appellee's store was a plank platform about a foot high and twelve feet in width. There was a pump in this platform, and vehicles were set upon part of it. This platform was also used by the public. Afterwards a gravel walk was substituted for the platform. From this lot to the Huston lot planks and stepping stones were used in muddy places until Huston set his fence back and built his sidewalk. When the railroad was completed into Bloomfield in the year 1881, there was not a house on the east side of the railroad right of way that fronted

in the direction of the railroad. There was then but one dwelling house between the pike and the depot, and that house fronted on the east. Since that time there have been built four new residences, one large tobacco warehouse, and the colored lodge building, and the dwelling house then owned by Thomas has been changed so as to front towards the railroad right of way.

There was also evidence to the effect that, about the year 1907, the board of trustees of the town of Bloomfield enacted an ordinance requiring the property owners abutting on the railroad right of way to construct brick pavements. In response to this ordinance the colored Odd Fellows had built a brick pavement. Appellee declined to build a brick pavement, but went before the board of trustees and agreed to build a gravel pavement, because that was better suited to the heavy hauling which was necessary in his business. This fact is testified to by a former marshal and one of the board of trustees. Appellee denies that he built the gravel walk in pursuance of any ordinance of the town of Bloomfield, or of any agreement with it, but claims that he built it merely for his own convenience.

For appellee, it is insisted that the judgment of the chancellor was proper because whatever use the public made of the sidewalk in question was merely permissive, and the facts in the case do not show that, even if there was a dedication, it was ever accepted by the town of Bloomfield. While it is true, that appellee permitted Huston to build the sidewalk, it is also true that the public from that time on, without let or hindrance, used the sidewalk which Huston had built, and even before that time they had made a like use of the ground where the sidewalk was built, although the sidewalk then existing was of a very unsubstantial kind. Upon the faith of the right to use the sidewalk in front of the lot in question, the others acquired property and made it front towards the railroad and built sidewalks in front of their property. They used the sidewalk in question along with the traveling public. This use has continued for more than fifteen years since Huston built the sidewalk. Upon these facts, we think there was a sufficient dedication of the sidewalk in question to the public use.

In the case of Riley v. Buchanan, 25 Ky. Law Rep.,

863, this court, in a lengthy discussion of the question of dedication and acceptance of public highways, announced the rule that, where a passway has been used by the public continuously for more than fifteen years, without let or hindrance from the owners of the land over which it runs, both a dedication by the owner of the land and an acceptance by the proper legal authority of the passway as a public highway will be conclusively presumed to have taken place.

In addition to the long continued use by the public of the sidewalk in question, the weight of the evidence is to the effect that the town of Bloomfield, about the year 1907, enacted an ordinance directing the property owners along the passway in question to construct brick pavements. In response to this ordinance, appellee appeared before the board of trustees and agreed to construct a gravel sidewalk, which he subsequently did. By enacting the ordinance in question the town assumed control over the sidewalk in question as a public sidewalk, and appellee, by building the gravel sidewalk in response to the ordinance, plainly dedicated it to the public use. These acts upon the part of the town and of the appellee were, we think sufficient to show a dedication and an acceptance.

Judgment reversed and cause remanded with directions to dismiss the petition.