### Harmon, et al. v. Lay, et al.

(Decided March 14, 1916.)

### Appeal from Whitley Circuit Court.

1. Dedication—Establishment of Street—Acceptance.—Under section 3581 to establish a street in a city of the fourth class there must be both a dedication by the owner and an acceptance by the city.

2. Dedication—Acceptance of Street.—Both the dedication and acceptance may be either express or implied, but proof of an implied dedication must be clear and conclusive before the land of a citizen will be taken for a public use or without compensation.

TYE, SILER & GATLIFF for appellants.

STEPHENS & STEELY for appellees.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

Appellants were the plaintiffs below and instituted this action in the Whitley circuit court against appel-

lees, J. C. Lay, J. J. Price and city of Corbin, to enjoin said Lay and Price from constructing a building upon or otherwise obstructing a strip of ground fronting 26 feet upon Railroad avenue in the city of Corbin, and extending back therefrom 112 feet, which strip of ground appellants assert is entirely upon and a part of Monroe street.

Appellees deny that said strip of ground is upon or a part of said or any street, and the only question involved here is, whether or not the said street was ever dedicated to or accepted by said city over this land, it being conceded that said street does exist, extending in an eastern and western direction up to the western or back end of the lot in question.

The facts are these: Some years prior to 1900 one Nels Cummins owned all of the land inclosed by Gordon street on the north, Railroad avenue on the east, First street on the south, and Main street on the west, within which boundary the lot in question is situated; that prior to 1900 said Cummins sold the western half of this boundary fronting on Main street, and extending back therefrom 100 feet, to Boreing, Jones and Ramsey, who sold same to the Corbin Town Company; that said Cummins sold the eastern half of said boundary fronting on Railroad avenue, and extending back a distance of 112 feet, and adjoining the eastern line of the portion sold to Boreing, Jones and Ramsey, to Gatliff and others, who afterwards sold same to D. T. Chestnut.

Said Chestnut acquired his portion of said land prior to the time that the Corbin Town Company purchased its portion thereof, and before January 17, 1900, but the exact dates of the several transactions do not appear in the record.

The Corbin Town Company, prior to 1900, laid off into lots and streets the portion of said land formerly owned by Cummins that it had thus acquired. One of the streets thus established was Monroe street, and as established by said company it, of course, terminates with the property line of said company, which is the back or western line of the strip of ground in controversy here, and now owned by appellees, Lay and Price.

Appellant Sampson owns a lot on the east side of Main street, fronting thereon 50 feet, and on the south side of Monroe street, running therewith 100 feet back to the division line between the lands owned by the Cor-

bin Town Company and D. T. Chestnut; his lot being wholly within the Corbin Town Company tract.

Appellant Harmon owns a lot fronting 100 feet on Main street, adjoining Monroe street on the north side thereof, and running through to Railroad avenue, between parallel lines a distance of 212 feet, being partially within the land formerly owned by the Corbin Town Company, and partly within the lands formerly owned by D. T. Chestnut. The strip of ground in controversy here adjoins on the south that portion of Harmon's lot formerly a part of the Chestnut tract.

Appellants base their contention solely upon the ground that the strip of land in controversy is a part of a public street, asserting no peculiar or private right thereto, but alleging a peculiar interest therein because of its proximity to their properties. Appellants contend that the lot in controversy was dedicated to and accepted by the city as an extension or part of Monroe street prior to 1900, and seek to prove said dedication and acceptance (1) by an adverse user by the public for more than fifteen years prior to the filing of this suit in July, 1913; (2) by a recital in a deed from D. T. Chestnut to J. C. Maynor, dated January 17, 1900, of record in the county clerk's office when they bought their lots, and (3) by work done upon said strip of ground as a street by the city. This strip of ground is a part of Monroe street if same was ever extended from the division line between said Chestnut's land and the Corbin Town Company's land to Railroad avenue. After said street had been opened by the Corbin Town Company up to Chestnut's land, he made a deed, dated January 17, 1900, to J. C. Maynor for a lot fronting 50 feet on Railroad avenue and running back at right angles thereto and between parallel lines a distance of 112 feet to the Corbin Town Company's land, in which the description is as follows:

"One house & lot situated in the town of Corbin, Whitley Co., Ky., bounded and described as follows, to-wit: Beginning at a stake 30 feet west of the Louisville & Nashville R. R. Co.'s right of way at J. W. Wyatt's N. E. corner; thence with his line S. 75½ W. 112 feet to a stake in the Corbin Town Co.'s line; thence with same N. 14½ W. 50 feet to a stake in line of a street; thence with said street N. 75 1.2 west 112 feet to a stake in line of Railroad avenue; thence with same S. 14 1.2 E. 50 feet to the beginning."

It is claimed by appellants that the unnamed street in said description is Monroe street extended to cover the strip of ground in controversy here; and, the said Chestnut then being the owner of said strip of ground in controversy, that said deed to Maynor constituted a dedication or recognition of a former dedication of said strip of ground by Chestnut as an extension of Monroe street from the Corbin Town Company's land to Railroad avenue, and that appellees, Lay and Price, having acquired their title from said Chestnut, are bound by the declaration in the Maynor deed, and estopped from asserting title adversely thereto.

Upon the question of an adverse user by the public of this strip of land as a part of Monroe street, the evidence shows by a decided preponderance that no such use was ever exercised or enjoyed by the public sufficient to divest Chestnut of his title to this strip of ground. Upon the other hand, it is rather conclusively shown for appellees that no such use was ever permitted by Chestnut. Prior to 1906, when the railroad depot was moved to a place near this land in controversy, most of this portion of the city was an uninclosed marsh covered with scrub oak trees, over which people could go to the old depot, picking their way as best they could, but not confined to any particular path or route, and certainly not to the land in controversy. After the location of the new depot, and when travel began to be confined to the strip of ground in controversy, Chestnut inclosed by posts and a few wires enough of the strip of ground in controversy to prevent it from being traveled over, and in 1909 or 1910 the city of Corbin constructed a concrete sidewalk along Railroad avenue abutting this lot 18" higher than the level thereof; and exacted of Chestnut as the owner of the strip of ground payment for his proportional part of the sidewalk. The sidewalk was constructed across this strip of ground now in controversy just as though it was not a street, and without providing any means of crossing over the sidewalk, so that by the construction of the fence by Chestnut between 1906 and 1909, and by the construction of the sidewalk by the city in 1909 or 1910, the use of this strip of ground as a street was most effectively prevented.

Upon the question of the acceptance by the city of this strip of ground as a public street by working same

as a street, the evidence shows that about ten years ago J. A. Gilliam, a member of the city council, as chairman of the street committee, had some work done upon Monroe street, and that he, thinking that said street extended over the ground in controversy here, made ditches and threw the dirt to the center across this strip of ground. In answer to a question by what authority he did this work, Mr. Gilliam said: "A. The street committee consisted of three men, O. S. Ball, W. L. Surran and myself. This work was done under the direction of the street committee. I was chairman of the committee. We did not think about it being anybody's property but the city of Corbin. If we had thought of it being D. T. Chestnut's we would not have worked it."

About the same time that this work was done by Gilliam, the city of Corbin had a man by the name of Fox to make a map of the city and paid him therefor. This map shows Monroe street as extending clear through from Main street to Railroad avenue covering all of the lot in controversy. Mr. T. F. Young, city clerk of Corbin, filed said map with his deposition and testified that the map was used generally by the city, but that to his "knowledge and understanding there are streets shown on the map that are not correct."

Appellant Harmon and one other witness testified that a good many years ago, upon one occasion, they saw the city marshal of Corbin with some city prisoners opening a ditch on this lot in controversy, but whether for the purpose of draining off water that was standing thereon, or for the purpose of working it as a street, they did not know.

While this showing, if uncontradicted and if accompanied by a dedication, would no doubt be sufficient to prove an acceptance by the city of this ground as a public street, it is not enough by itself to divest Chestnut of his title, and invest same in the city. There must be both a dedication and an acceptance, and either or both may be express or implied. Kentucky Statutes, section 3581; Dillon's Municipal Corp., section 642; Hall v. Leeper, 121 S. W., 683. But proof of an implied dedication "must be clear and conclusive before the land of a citizen will be taken for public use or without compensation, and acceptance of the dedication is as necessary." Spurrier v. Bland, 49 S. W., 469.

Appellants admit that Chestnut in his deed to that portion of Harmon's lot which he formerly owned, did not call for or refer to Monroe street, although the southern line of said lot would have been the northern line of said street if it then existed. And the only thing in the case that may be held to be a dedication or recognition of a dedication by its owner of this land as a part of Monroe street is the recital above referred to in the description of the land conveyed by Chestnut to J. C. Maynor by deed dated January 17, 1900, and appellants' claim of a dedication must stand or fall thereon.

The evidence shows that appellants were in no wise connected with or privy to said deed, and that said deed was executed by Chestnut under the following circumstances: He had a short time prior thereto sold said lot by title bond to D. O. Stephenson. Said lot was then inclosed by a fence and lacked 10 or 12 feet of touching what would have been Monroe street if it had existed upon the land in controversy. Stephenson thought he had sold this lot to a man by the name of Schorr, and procured Chestnut and his wife to execute a deed in which the lot was correctly described without reference to Monroe street, and to deliver said deed to him for delivery to Schorr. Schorr failed to accept the deed, and a short time thereafter Maynor presented said deed to Chestnut with the following endorsement thereon, to-wit: "Mr. Chestnut, please make to J. C. Maynor deed for this property as my deed to Mr. Schorr did not go through, the consideration is $250.00—credit on my a/cs. D. O. Stephenson."

At the same time Maynor presented to Chestnut for execution a deed to him for said lot in which the lot was correctly described by metes and bounds, but erroneously called for Monroe street, but not by that name. Chestnut and his wife executed the deed presented to him without examination, and he did not discover until some time thereafter that the deed contained a call for a street where none existed, but when he did make the discovery, he went to Maynor and called his attention to the mistake, and Maynor, according to the uncontradicted testimony of Alex Frances, acknowledged to Chestnut that the said reference to said street was a mistake, and Chestnut remained in the possession of the 10 or 12 feet between said lot and what would have been the line

of Monroe street if such a street had existed at this place.

That this evidence correctly states the facts is indicated by the fact that M. Samuels, who now owns the Maynor lot, not only is not claiming that his lot reaches said street, if it existed, or that the street exists at the place in controversy, but, upon the other hand, at about the time that Chestnut conveyed to Lay and Price, bought from Chestnut the strip of 10 or 12 feet, and took a deed thereto, without any reference therein to such a street.

It is our judgment that the statement in the Maynor deed, if binding upon Chestnut at all, could have been so only on Maynor and his successors in title, and that same cannot be construed in favor of the city or any other, either as a dedication or recognition of a dedication of the land in controversy as a public street; and that appellants failed to prove a dedication.

It may be well to state, as further evidence that our conclusions are correct, that Mr. W. C. Bryant, who was mayor of the city of Corbin from 1906 to 1910, and Mr. J. W. Wyrick, who was mayor of said city from 1910 until the date of the trial of this case, both have testified here for appellees that the lot in controversy is not now, and was never to their knowledge, a part of Monroe street; and that the city of Corbin, as the defendant to this suit in the lower court, and as appellee in this court, is contesting the claims of appellants. From which it is at least doubtful if the evidence proves an acceptance, even if there had been a dedication, which is not proven.

The lower court having, in our judgment, correctly decided this case, the judgment is affirmed.