## Warfield Natural Gas Company v. Laferty et al.

(Decided December 20, 1929.)

KIRK, KIRK & WELLS for appellant.

B. M. JAMES and JOE HOBSON for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

The Warfield Natural Gas Company brought this action in the Floyd county court to condemn a right of way for pipe line, telephone, and telegraph purposes over the farm of Melvin D. Laferty and his wife, Alice Laferty. The commissioners appointed by the county court awarded Laferty $159 for the land taken, and $45 for six apple trees and three peach trees. Each side filed exceptions. The exceptions of the defendants were sustained, and the report of the commissioners was quashed. The court then appointed new commissioners, who awarded $100 for land taken and $25 as incidental damages. On exceptions to this report, the case was tried by a jury, which also awarded the sum of $100 as the value of the land taken and $25 incidental damages. On appeal to the circuit court, the jury fixed the damages at $240. The gas company has prayed an appeal.

Appellant's contention that the verdict is excessive necessitates a review of the evidence. The farm consists of 15 acres, and lies on Bull creek in Floyd county. The strip of land taken is 20 feet wide and 1,146 feet long, and contains 53/100 of an acre. With the exception of a short distance where the pipe is exposed, the pipe line is buried from 3 to 4 feet deep. Along this strip it is proposed to construct telephone and telegraph lines. T. J. Kirwin, the right of way agent for appellant, and who had been in the pipe line business about 19 or 20 years, fixed the value of the land taken at $25, and said that it would not be necessary to go upon the land to make repairs oftener than once every five years. Lewis Dingus, employee of appellant, testified that a portion of the land along the side of the hill was steep, but it was not so steep when you left that point. The pipe line was uncovered only for a distance of 1½ feet. In his opinion, the market value of the land was $35 or $40 per acre. On the other hand, Laferty stated that the market value of the farm before it was taken for pipe line purposes was worth $2,000, while its market value after it was taken was only $1,500. Appellant's employees dug up two apple trees and scarred four more apple trees. They tore down his fence in two different places, and carried away three palings. They also rolled several rocks down on his land, possibly three or four wagon loads. He used his land for farming purposes. There are now eight telephone poles on his land.

James Laferty also testified that the land was worth $2,000 before it was taken and only $1,500 after it was taken, and fixed the market value of the land per acre at $50 to $60. Cal Clark, one of the commissioners originally appointed by the county court, and a landowner, was of the opinion that he knew the market value of land on Bull creek, and fixed the value of the land taken at $204. On cross-examination he said that the market value of the land was $125, including improvements, and $50 without the improvements. Arthur Gray testified that the land was worth $2,000 before taken and only $1,500 or $1,600 after it was taken. Land had been selling from $65 to $55 an acre. He did not know exactly what Melvin Laferty's land was worth, but thought it worth about $45 to $55 an acre.

While the question of damages in a condemnation proceeding is for the jury, and its verdict will not be set aside as excessive when supported by substantial evidence, we are committed to the rule that opinions as to values without facts to support them, or based on facts that are more or less speculative or remote, as well as somewhat fanciful, are of little value, and may be in a large measure ignored. Kentucky Hydro-Electric Co. v. Woodard et al., 216 Ky. 618, 287 S. W. 985. Even if appellant's evidence that the land was worth $35 or $40 per acre be entirely ignored, the situation presented is this: While appellee and three other witnesses testified that the market value of the land before it was taken was $2,000, and $1,500 after it was taken, the three witnesses when brought to earth on cross-examination fixed the value of the land actually taken at from $45 to $65 an acre. Appellee did not give any estimate as to value by the acre, but assuming, as he stated, that the entire farm was worth $2,000, its value per acre would be only $133.33. In the circumstances, the actual value of the 53/100 of an acre taken would be $70 according to appellee's estimate, and not over $35 or 40 according to the estimate of his other witnesses. This estimate is on the theory that the entire strip was taken. As a matter of fact, it may still be used and cultivated by appellee. Even if we disregard appellee's other witnesses and accept his estimate, the value of the land actually taken is $70. Adding to this the incidental damages of $45 fixed by the commissioners first appointed, which is $20 more than the incidental damages fixed by the other commissioners and the jury in the county court, we have at

the outside a total of $125. In the circumstances, there is no escape from the conclusion that the verdict of $240 is clearly excessive.

On another trial the court will exclude evidence as to what it cost to acquire a right of way by contract. Wherefore the appeal is granted, the judgment reversed, and cause remanded for a new trial consistent with this opinion.