## Warfield Natural Gas Company v. Wills et al.

(Decided February 28, 1930.)

KIRK, KIRK & WELLS for appellant.

B. M. JAMES and JOE HOBSON for appellees.

OPINION OF THE COURT BY JUDGE DIETZMAN—Reversing.

This is a condemnation proceeding started in the county court by the appellant, and by which it sought to acquire an easement through the appellees' farm in Floyd county for the purpose ''of laying, maintaining and operating a pipe line or lines for conveying, transporting and delivering natural gas to the market and maintaining and operating such pipe line or lines, telephone and telegraph lines for use in connection therewith, together with the right of ingress and egress to examine, alter, repair, operate, maintain and remove such pipe line or lines.'' The right of way for this easement thus sought runs through the bottom lands of the appellee's farm adjacent to Bull creek for the distance of 81 rods and is 20 feet wide. The area comprised within this strip is slightly more than three-fifths of an acre. The first set of commissioners appointed by the county court fixed the compensation to be paid for this easement at the sum of $610. The report of these commissioners was quashed because it developed that one of the commissioners was ineligible to serve as such. The second set of commissioners fixed the compensation at $650, $610 being for the value of the land taken and $40 for incidental damages. Both appellant and appellees filed exceptions to this report, the appellant on the ground that the compensation allowed was excessive, and the appellee on the ground that it was not enough. The jury in the county court found a verdict exactly in accordance with the report of the second set of commissioners. On appeal to the circuit court, the jury awarded the appellee com-

pensation in the sum of $750, and from the judgment entered on that verdict this appeal is prosecuted.

Two grounds are relied upon for reversal. It is first contended that the trial court erred in not awarding the appellant, the condemnor, the closing argument. While the position of the appellant in this regard is sound, since, as we pointed out in the case of Warfield Natural Gas Co. v. Hammons, 233 Ky. 48, 24 S. W. —— it is settled that where exceptions are filed by both parties to the report of the commissioners, the burden of proof is then on the condemnor, yet appellant cannot rely upon this error as a ground for reversal because it did not make such error a ground in its motion for a new trial in the lower court. See the Hammons case, supra. Further, it is doubtful whether the appellant was prejudiced by the court's refusal to award it the final argument, since after its counsel had argued the case appellees' counsel declined to argue their case.

The other ground relied upon for reversal is that the verdict is excessive, and in view of the facts as disclosed in this record, we are constrained to so hold. Except the evidence as to damage to fences and crops, which we will presently discuss, there is no evidence that any portion of the appellees' farm was taken or damaged by the construction of the pipe line except the strip 20 feet wide and 81 rods long through which the easement runs. As to this strip, a 20-inch pipe was buried in the ground at a depth of about 2 feet or more and a telephone line strung on 8 poles planted in the ground. It is true this strip runs through the bottom lands of appellees' farm, the most fertile and best part of their land, but conceding all that the appellees say of its fertility, the record showing that it will average in normal seasons about 50 bushels of corn to the acre, the court knows as a matter of common sense, as we said in the Hammons case supra, that the price of over $1,000 per acre, which the appellees place on this bottom land, is fantastic, and that agricultural land remotely situated as this is, even if it is on a county road leading to the county seat, is not worth any such price. While the appellees state that they have not parted with the mineral rights under this land, there is no evidence whatever that there are any minerals under their land, and especially under this strip. If this strip were absolutely taken in fee by the appellants, the appellees would lose but .61 of an acre

from their farm, and in light of the testimony in this case taken as a whole, $500 an acre is the outside price which this bottom land would bring, so that the sum of $300 would be ample compensation for the absolute taking of this strip. However, the strip is not absolutely taken, for subject to the rights of the appellant, as above set out, the appellees may make such use of the land as they desire. The rights of the appellant do not prevent appellees' passage from one part of their land to another. They may even farm this strip, subject, it is true, to appellant's right of patrol, repair, and the remote possibility of laying another pipe line through it. Indeed, the evidence shows that since this pipe line was laid in this strip, the appellees have farmed this strip the same as they always did, have sown part of it in grass and cut the hay therefrom and have planted the rest of it in potatoes and harvested that crop. It is true that some of the appellee's witnesses on direct examination fixed the damages of appellees in excess of $1,000, but, as we said in the case of Warfield Natural Gas Co. v. Laferty, 232 Ky. 248, 22 S. W. (2d) 611, 612, "when brought to earth on cross-examination," disclosed the unsubstantial basis on which they fixed that value and their conclusions can make but little headway against what the record discloses to be the necessary conclusions from undisputed facts. L. & N. R. Co. v. Burnam, 214 Ky. 736, 284 S. W. 391. The appellee himself when on the stand did not testify as to any damages done his crops or fencing when this pipe line was constructed. The appellant's witnesses state that the damages done in going through some corn and meadow land that was on this strip did not exceed $25 or $30. One of the appellees' witnesses, who was not present when the crop was harvested, made a guess that the damage done to the fencing and crops was $200. Recollecting that the strip comprises only three-fifths of an acre, and that had it been all in corn and producing the maximum which the evidence shows this land will produce in normal seasons, but 30 bushels of corn would have been destroyed, and that would not have exceeded $30 in value. It is not shown to what extent the fences were cut, but the cost of repairing them could not have been very great, so that when we add all of the elements of damage together we see that at the very maximum we cannot get more than about $350 damages disclosed by this record. It there-

fore is apparent that the verdict was grossly excessive, and we so held in the similar cases of Warfield Natural Gas Co. v. Hammons, and Warfield Natural Gas Co. v. Laferty, supra.

The judgment of the lower court is therefore reversed, with directions to grant the appellant a new trial in conformity with this opinion.