## City of Hazard v. Eversole et al.

(Decided February 3, 1931.)

244

CLARK PRATT for appellant.

W. C. EVERSOLE for appellees.

OPINION OF THE COURT BY JUDGE RICHARDSON—
Reversing.

For their cause of action, appellees set out in their petition that, during the years 1924-25, J. S. Kelly, Paul Shields, and the city of Hazard wrongfully entered upon their land, without their consent, and committed a trespass by taking possession of "a strip of land 40 feet wide and 325 feet long" situated on Susan Eversole's branch.

They dug up, excavated, and built thereon a "storm sewer," and graded and constructed a street, and so constructed them that they caused "the branch to overflow, run over and injured their land, from freshets and high water in the branch." "The trespass and undue taking of the strip from their property damaged the remainder thereof, $1,500.00."

J. S. Kelly and Paul Shields are not parties to this appeal. The issues between them and the appellees are thus eliminated and will not be considered in the disposition of the issues involved.

The city of Hazard, in its separate answer, traversed the allegations of the petition. For affirmative defense, it alleged (1) that, in an action instituted by Shields and Kelly against the appellees in the United States District Court for the Eastern District of Kentucky, they recovered a judgment against the appellees for the construction of the storm sewer and street in question under a contract with the city of Hazard, and that this judgment is res judicata as against the appellees in this action; (2) that the land of appellees since the rendition of that judgment has been sold in satisfaction thereof, and that they are not now the owners of it; (3) that the land had been used by the general public and the city as a highway for a period of more than fifteen years; (4) that the appellees executed and delivered to the treasurer of the city of Hazard, after the construction of the storm sewer and street, their joint application for the ten-year payment plan of this street, and by that act they are estopped. (5) The land had been dedicated by appellees and accepted by the city as a street.

A trial was had before a jury, a verdict was returned by it and a judgment entered thereon, awarding the appellees as damages, the sum of $2,000 from which this appeal is prosecuted.

In his brief, counsel for appellees makes this statement: "The petition alleges that they were trespassers and neither the contractor or city at any time legally or equitably had any rights therein whatever." The allegations of the petition and the statements of counsel show that appellees regarded this as an action for trespass.

There is no allegation in the petition charging negligence, fraud, or bad faith on the part of the city of Hazard, or its officials. Even if their land were taken by the city without their consent, for the purpose of con-

structing a storm sewer and street, without condemnation proceedings to acquire it, and even if the city had no rights to the land, either by prescription, or dedication, expressed or implied, an action for trespass does not lie against the city for appropriating the land for the purpose of erecting the storm sewer and the street thereon. Their remedy is one to recover of the city the value of their land so taken by it for public purpose without compensation.

In the introduction of their evidence and in its admission by the court, the appellees and the court treated it as an action for trespass. However, the court when it came to instruct the jury, undertook to give to it instructions applicable to condemnation proceedings to condemn land for public purposes.

If the appellee's land were taken by the city and appropriated for public purposes without right, without the consent of the appellees, in good faith, without negligence or fraud, and it constructed the storm sewer and street thereon, their remedy against the city is an action for the value of the strip so appropriated. This is not unlike an action by an owner of land against a county to recover the value of his property taken for public use under section 242 of the Constitution.

Harlan County v. Cole, 218 Ky. 819, 292 S. W. 501, 503, was an action for trespass against the county for appropriating land for a public road, without the consent of the owner and without first instituting a condemnation proceeding, in which we said: "His action, therefore, must be treated the same as if it had been an appeal from an assessment legally made in a condemnation proceeding after trial before a jury in the county court as provided by law. It follows that his case when tried in the circuit court should have been tried under the law governing such appeals." Black Mountain Corporation v. Houston, 211 Ky. 621, 277 S. W. 993; Muhlenberg County v. Ray et al., 215 Ky. 295, 284 S. W. 1074.

In the case of McDonald v. Powell County, 199 Ky. 300, 250 S. W. 1007, 1008, the court said: "This action is for a direct taking of property for public use without compensation. We think the same rule applies in both cases, and that this action may be maintained; the measure of damages being the same as in condemnation proceedings in the establishment of a public road."

There is no reason that the trial, the rule of evidence, and the instructions of the court to the jury, where land is so taken by a city, and appropriated by it for street purposes, should not be identical with that of an action by the county to condemn land, or on an appeal from a judgment in condemnation proceedings, for that purpose.

The appellant complains of the admission by the trial court of incompetent evidence. The appellee W. E. Eversole was permitted to testify that "this street was constructed on three sides of the property. The city charged it, and the buildings thereon, for all the street and took a lien thereon." That "there was $3,700.00 for building Newland street alone." "All the assessment against that property is now about $10,000.00; that includes Combs street and High street too. The fair market value of this forty feet strip of property taken for Newland street at a fair voluntary sale for cash was $2,000.00." He had bought and sold property in the neighborhood of this property; "sold to the Y. M. C. A. and to the L. & N. Railroad Company before any street improvement was made on either High or Combs street;" "the value of that 40-foot strip is $50.00 a front foot." He "was acquainted with the value of real estate in the town of Hazard and in this particular part." He sold another lot for $72 a front foot, and 42 feet for $3,000 adjoining this property across the street on the River side along about 1924-25. This was in September 1926, after this property was taken in the construction of Newland street. They made a fill practically all along the street from 1 to 3 feet high all along above the property. Beneath that street they built what is known as the "storm sewer." The concrete sewer, the walls of which are about three or four inches thick by four feet high, are of solid concrete the whole length of Newland street 325 feet at the front end and the entire length of Combs street; that the storm sewer carried the water from this place; it closed up soon after they constructed it. It stopped up with rocks and logs. There is a stream of water empties into this three-quarters of a mile long, and this water covers it and thus has ruined this property for building purposes as well as to make it impossible to raise anything on it. I have seen as high as three feet of water passing right down over this property and of course if you put any kind of building there it would

finally be destroyed. It has damaged this property at least $1,500.00 by them constructing the street in the way and manner they have constructed it on the south side of the property; there is another stream that comes down there that runs up toward Broadway; that water pours in and comes across this property. This water freezes and is a solid cake of ice along Newland street now. His property would have brought about $12,000.00 before the construction of Newland street. Immediately after the completion of Newland Street it would not have brought exceeding $7,000.00.''

The appellant objected to the admission of this evidence. Its objections were overruled, to which it excepted.

A lot owner is not entitled to recover of a city for consequential damages to his lot resulting from the establishment of an original grade, and the construction of a street according to it, when not done negligently or corruptly or in bad faith. City of Louisville v. Lausberg, 161 Ky. 361, 170 S. W. 962. The building of Newland street was an original grade and construction. It not being alleged and proven that it was done negligently, corruptly, or that it was done in bad faith, no testimony relating to consequential damage should have been permitted to go to the jury. City of Owensboro v. Hope, 128 Ky. 524, 108 S. W. 873, 33 Ky. Law Rep. 375, 15 L. R. A. (N. S.) 996; City of Owensboro v. Singleton, 111 S. W. 284, 33 Ky. Law Rep. 775; Philpot v. Town of Tompkinsville, 184 Ky. 511, 146, S. W. 1093.

In Warfield Natural Gas Co. v. Laferty, 232 Ky. 248, 22 S. W. (2d) 611, we said: ''We are committed to the rule that opinions as to values (of land) without facts to support them, or based on facts that are more or less speculative or remote, as well as somewhat fanciful, are of little value, and may be in a large measure ignored. Kentucky Hydro-Electric Co. v. Woodard, 216 Ky. 618, 287 S. W. 985.''

The testimony of the appellee, Eversole that his land was worth $12,000 before and $7,000 after the construction of the street without a description of the land, its actual dimensions, its improvements, its location, or any facts upon which to base an opinion, clearly falls within the rule that opinions of witnesses, without facts to support them, or based on facts more or less speculative or fanciful, are of little value, and in a large

measure should be ignored. Kentucky Hydro-Electric Co. v. Woodard, 216 Ky. 618, 287 S. W. 985; Warfield Natural Gas Co. v. Laferty, 232 Ky. 248, 22 S. W. (2d) 611; Big Sandy & Kentucky River R. Co. v. Stafford, 207 Ky. 272, 268 S. W. 1071. Testimony showing the similarity in all particulars of the lots which he sold or included in his estimation when giving his opinion thereof, as tending to show the value of the lot in question, must be such as to raise a logical inference that practically the same elements of value are presented in both cases. W. Ky. Coal Co. v. Dyer, 161 Ky. 407, 170 S. W. 967. The lots which appellee Eversole sold to others, and the lots of which he fixes the prices in his testimony, are not shown to be similarly situated to the lots for which appellees sue. It is common knowledge that the location of lots in a city materially affects their value, and, in giving the value of other lots, the testimony should show their location and similarity to the one involved, so that the jury may determine whether the location of the lot in controversy may be compared properly in value.

The evidence shows that the street was constructed over a branch, and the value of other lots not in the vicinity of the branch, or near it, or differently located, or on different streets of the city, would have a tendency to mislead the jury rather than enlighten it as to the value of the strip on which the street was constructed.

The appellee Eversole was permitted to give the dimensions of the strip of land so taken by the city to be 40x325 feet, without giving any measurement or other means or any facts showing how he was enabled to know its dimensions. His statement of the dimensions of the strip were merely his opinion without facts upon which to base it; such opinion is clearly within the rule announced in Kentucky Hydro-Electric Co. v. Woodard, and Warfield Natural Gas Co. v. E. H. Laferty, supra. Other witnesses for appellees were asked substantially the same questions and made like answers to those propounded to, and answered by, the appellee, Eversole. Such testimony of these, or other witnesses, should be governed by the rule laid down in the cases, supra. The appellant having objected to the testimony of appellee, Eversole, which we have heretofore considered, it was unnecessary for it to continue to object to the same character of testimony when given by other witnesses. Standard Elkhorn Coal Co. v. Riggs, 219 Ky. 51, 292 S. W. 476.

The action instituted by Shields and Kelly in the United States District Court for the Eastern District of Kentucky against the appellees was for the purpose of enforcing a lien which they asserted against the land of appellees, including the strip in controversy, existing under a contract between them and the city of Hazard, under which the storm sewer and Newland street were erected. It may not be relied upon as res judicata. The parties to that action and the subject-matter involved were entirely different. The city of Hazard was not a party to that action. Chiles v. Conley's Heirs, 32 Ky. (2 Dana) 21. The appellant offered a written application executed and delivered by the appellees to the city after the completion of the storm sewer and the street, by which they asked to be permitted to pay for the construction thereof, under the ten-year payment plan. The writing is not competent in this action for any purpose, if the appellees in fact owned the strip of land and the city took possession of it and appropriated it for public purposes, without their consent. The signing and delivery of this instrument by them was no waiver by appellees of their right to recover against the city the value of their land so taken by it. The sale of land is not shown by the evidence, but, even if they sold their land, this did not affect their cause of action, if any they had, for the taking of their land for public purpose. The appellant insists that the amount of recovery fixed by the verdict of the jury is excessive. Inasmuch as the judgment must be reversed on other grounds, and, if another trial is had, this ground of complaint may not again exist, we deem it unnecessary to give any further consideration to the question of excessive damages. The appellant further complains of the manner in which the instructions were prepared and given to the jury, and insists that they are erroneous.

The instructions were given by the court on his own motion.

At the time the instructions were given, they were not reduced to writing. The defendant objected and moved the court to give written instructions to the jury. Also objected to those given orally to the jury. They were then dictated by the court to the stenographer and by him transcribed. It does not appear at what stage of the trial the stenographer transcribed them. It does not

definitely appear whether they were read to the jury or given to it, either before, during, or after argument of counsel, or before or after the jury retired to consider their verdict. Subsection 5, sec. 317, Civil Code of Practice, requires instructions to be given in writing when so requested by either party. As long ago as 1858, this court construed section 347 of the Civil Code of Practice, now section 317, to require all instructions in civil cases, on motion of either party, to be reduced to writing before the jury retires to consider their verdict. It was error to give to the jury oral instructions over defendant's objection. Besides they are confusing. There are so many errors in them it is unnecessary to particularize them.

The strip of land on which the storm sewer and street were erected lies on both sides of Susan Eversole's branch. The appellees' deed calls for the meanders of the branch, which carried their land to the center of the branch. Robinson v. Wells, 142 Ky. 800, 135 S. W. 317; City of Covington v. State Tax Commission, 231 Ky. 606, 21 S. W. (2d) 1010.

Some distance from the branch and parallel therewith, a fence on appellees' land separates this strip on which the storm sewer and street were erected from the remainder of their land. The storm sewer was constructed in the branch, meandering therewith, except where its shores were cut to straighten out the crooks in its windings. The street, when erected with curbing, is 20 feet wide and 297 feet long. By a survey and map it is shown that 60 per cent. of the street is on the land of appellees and 40 per cent. on the land adjoining, which is owned by another and lies on the opposite side of the branch, making about 11 feet of the street constructed on the land of appellees. It is shown that the land of appellees so appropriated for the building of this street was not occupied, used, or enjoyed by them, for any purposes connected with the land on the opposite side of the fence. It is not shown that by taking of the land from the center of the branch towards the fence in any way resulted in any injury to the fence or to the land on the opposite side of it belonging to the appellees. The land between the fence and the center of the branch was used and treated by them as a separate and distinct parcel. It was in no wise, either directly or indirectly, in actual use as a part of the land inclosed by the fence.

The market value of the strip between the fence and the center of Susan Eversole's branch, in the condition it was in, even if it were not already a roadway or street at the time it was taken possession of by the city, is that market value to which the court should confine the testimony of this branch of the case, and, if no evidence is offered other than opinions of witnesses showing the dimensions of the strip of land taken for the street, then the dimensions thereof shown by the survey and map should control. Sneed v. Com., 237 Ky. —, 34 S. W. (2d) —.

The instructions to the jury to find for the plaintiff the value thereof, as defined in condemnation proceedings, should be given, omitting any reference to incidental or consequential damages. City of Hazard v. Combs, 229 Ky. 222, 16 S. W. (2d) 1022; David v. L. & I. R. R. Co., 158 Ky. 721, 166 S. W. 230.

The instruction set out in the David Case, supra, should, in substance, be given in lieu of the ones given, with a modification, directing the jury to deduct, from the market value thereof, the market value of so much of the land as was used by the city with the consent of appellees for the construction of the sewer thereon for city sewage purposes, prior to the taking possession thereof to construct "the storm sewer and Newland street."

The appellant insists that the evidence establishes conclusively both a prescriptive right to, and a dedication of, the strip taken before the storm sewer and Newland street were constructed. An express dedication was not attempted to be shown by appellant. There is some evidence tending to establish an implied dedication. But an implied dedication must be clearly and convincingly shown before their land may be taken from them for public use without compensation. Harmon v. Lay, 169 Ky. 132, 183 S. W. 459. The dedication may be impliedly made or impliedly accepted by long-continued use or by the proper officials taking charge of the same as a public road or street. Wilson v. Pioneer Coal Co., 191 Ky. 408, 231 S. W. 37.

The appellant relies on the provisions of section 3561, Ky. Stats. That section has application, where it is admitted, or clearly and convincingly proven, that the

land has been dedicated by the owners to the use of the city. It is a question for the jury to determine on the disputed facts, whether or not a dedication has been made by the appellees and accepted by the appellants, within the purview of that section of the statute. The construction of a sewer on a portion of the ground covered by Newland street prior to the time it was built was a dedication for a specific purpose, and the city was limited to its use for that purpose. The construction of its sewage system thereon, with the consent of the appellees, did not entitle it to take the entire strip of land on which the storm sewer and the street were constructed without compensation. Home Laundry Co. v. City of Louisville, 168 Ky. 499, 182 S. W. 645; City of Bloomfield v. Allen, 146 Ky. 34, 141 S. W. 400, 7 A. L. R. 122.

It is not conclusively shown that the city of Hazard policed, repaired, worked, or maintained a street on the land on which Newland street was erected or otherwise exercised any rights over it prior to the construction of the sewer as a part of the sewage system of the city. It was a question for the jury to determine under proper instructions, whether this strip of land was used by the general public or the city as a matter of right, adversely to appellees for the statutory period of limitation, L. & N. R. R. Co. v. Rayl, 107 S. W. 298, 32 Ky. Law Rep. 870; Ward v. Edge, 100 Ky. 757, 39 S. W. 440, 19 Ky. Law Rep. 59; Murphy v. Roney, 82 S. W. 396, 26 Ky. Law Rep. 634, or that it had been impliedly dedicated by appellees for public use, prior to the time it was taken possession of by the city for the construction of the storm sewer and the street, Hegan v. Pendennis Club, 64 S. W. 464, 23 Ky. Law Rep. 861; City of Paducah v. Johnson, 93 S. W. 1035, 29 Ky. Law Rep. 532; Terrill v. Bloomfield, 21 S. W. 1041, 14 Ky. Law Rep. 614; Bosworth v. Mt. Sterling, 13 S. W. 920, 12 Ky. Law Rep. 157; Cornwall v. Louisville & N. R. Co., 87 Ky. 72, 7 S. W. 553, 9 Ky. Law Rep. 924.

For the reasons indicated, the judgment is reversed, and cause remanded for a new trial consistent with this opinion.