STATEWIDE DEVELOPMENT COMPANY, a Kentucky Corporation; and South Lexington Development Company, a Kentucky Corporation, Appellants,

v.

LEXINGTON FAYETTE URBAN COUNTY GOVERNMENT; and Commonwealth of Kentucky, Transportation Cabinet, Department of Highways, Appellees.

No. 90–CA–2560–MR.

Court of Appeals of Kentucky.

Dec. 20, 1991.

Sidney R. Marshall, Jr., Julius Rather, Lexington, for appellants.

Edward W. Gardner, Wayne Waddell, Lexington, for appellee, LFUCG.

Louis Kawaja, Martha P. Ogden, Lexington, for appellee Transp. Cabinet.

Before HOWERTON, SCHRODER and WILHOIT, JJ.

HOWERTON, Judge.

Statewide Development Company and South Lexington Development Company appeal from a summary judgment in favor of the Lexington Fayette Urban County Government (LFUCG) and the Commonwealth of Kentucky denying a claim for compensation in an inverse condemnation action. Statewide was administratively dissolved on November 10, 1989, and South Lexington Development's charter was revoked on August 31, 1982. Both corporations were wholly owned by developer Ted Osborn, and we shall refer to the appellants as Osborn. Having thoroughly reviewed the record and applicable law, we affirm the summary judgment.

The dispositive issues on appeal are whether the trial court erred in giving effect to a 1975 deed for 5.58 acres and whether the LFUCG acquired an additional 2.23 acres by dedication by estoppel. We do not address the question of sovereign immunity, as this was not raised in appellant's prehearing statement, CR 76.14(6); *Karam v. Greentree Corporation*, Ky. App., 783 S.W.2d 78, 81 (1990), and the trial court's ruling in this respect is affirmed. We also decline to address the question of the 15–year statute of limitation, because that is not necessary, considering our disposition of the case. We note that Osborn concedes that the statute of limitations bars any claim for damages to his land for the removal of top soil and engineering stakes, and tearing down of fences.

This case is a morass of confusion. The parties are aware of the facts and we shall recite only those necessary for an understanding of the issues on appeal. In 1974, LFUCG had plans to extend Man–O–War Boulevard, a four-lane, limited-access artery. It was to the advantage of both the LFUCG and subdivision developers adjacent to the road that the grade and drain work on the road be coordinated with planned subdivision developments. Therefore, the mayor of LFUCG requested in April 1975 that Osborn donate land for the right-of-way intersecting Grasmere Subdivision in southern Fayette County. This

same request was made to other developers in the vicinity. The LFUCG contends that Osborn donated 7.81 acres of land. This was accomplished in two steps: the first by a deed dated April 17, 1975, donating 5.58 acres, and the second by dedication by estoppel. Osborn contends that he was willing to donate this land and planned to take a tax deduction of $200,000. He states that he submitted a deed to LFUCG reciting consideration of $200,000, and a plat for the 7.81 acres in which he certified that he owned the property and was dedicating the right-of-way for Man–O–War Boulevard. He claims this plat was never accepted by LFUCG. At oral argument, counsel for LFUCG stated he had never seen a deed reciting consideration of $200,-000. Precisely why Osborn changed his mind is not clear from a perusal of the record, but his counsel hinted at continued animosity between the parties.

In any case, Osborn contends that the LFUCG procured the deed by fraud and that the conveyance of the additional 2.23 acres is invalid because the plat showing the dedication of both parcels was never approved by the local planning commission or recorded.

 We shall first address Osborn's contentions concerning the 1975 deed. This deed was acquired when a partner of Osborn's attorney telephoned him in April of that year to say that LFUCG needed a deed to the right-of-way because state funds were being expended in the grading and drain work on this land, and it was against state law to expend state funds on private land. The funding was provided in part through the Municipal Aid Program. LFUCG provided a metes and bounds description of the right-of-way to Osborn's attorney, who drew up a quitclaim deed donating the 5.58 acres. This was signed by Osborn on April 17, 1975, and accepted by the Urban County Council on the same date and recorded on the following date. Osborn contends he was told by his attorney that the deed was not to be recorded, but just to be kept in a drawer to show the state auditors that the LFUCG was not expending funds on private land. Osborn

also claims he was told that state law prohibited a deed's being recorded without a plat's having been previously approved by the planning commission and recorded. Thus, Osborn claims the deed was obtained by fraud.

This conflicts with a letter written by Osborn on August 15, 1975, to Jack Edmiston, Urban County engineer, asking that the mayor write a letter requesting that Osborn donate the additional 2.23 acres. Osborn wrote, "You may recall that this was the procedure followed when I *gave* the land for this same right-of-way through Grasmere, Unit 2." (Emphasis added.)

Osborn also complains that there was no recorded plat for this deed and that KRS 100.277 prohibits conveyances without a recorded plat. In 1975 and 1976, KRS 100.-277 read in pertinent part:

(2) No person owning land composing a subdivision, or his agent, shall transfer or sell or agree to sell any lot or parcel of land located within a subdivision by reference to, or by exhibition, or by any other use of a plat of such subdivision, before such plat has received final approval of the planning commission and has been recorded. Any such instrument of transfer, sale or contract shall be void and shall not be subject to be recorded, but all rights of such purchaser to damages are hereby preserved....

(3) Any street or other public ground which has been dedicated shall not be accepted by the legislative body until it has received recommendations from the planning commission.

The purpose of KRS Chapter 100 is land use planning and control. *McCord v. Pineway Farms*, Ky.App., 569 S.W.2d 690, 692 (1978). It is apparent that KRS 100.277 prohibits dividing property and selling parcels of land without an approved, recorded map—a plat—of the subdivision. This statute was intended to insure that subdivision development complies with local zoning laws and that streets and services are adequate to meet the increased demand brought on by development. It clearly limits development of subdivisions, and even streets therein, by property owners, but it

does not prohibit direct development of streets and roads by governments.

KRS 100.361 exempts local governing bodies from planning commission approval. KRS 100.361(2) read in part, as it was in effect in 1975–76, "Any proposal affecting land use by any department, commission, board, authority, agency, or instrumentality of state government shall not require approval of the local planning unit." Cities and counties, as local governmental units, are instrumentalities of state government, "and as such, [are] immune from complying with zoning regulations." *Edelen v. Nelson County*, Ky.App., 723 S.W.2d 887, 889 (1987). Zoning regulations may not override implementation of governmental functions. *Id.* Constructing and maintaining public roads is just such a governmental function. "[T]he planning and zoning commission has no control over the construction or improvement of county roads. That is a function of the fiscal court." *Lampton v. Pinaire*, Ky.App., 610 S.W.2d 915, 920 (1980).

■ Finally, it is well settled that a deed properly signed and delivered is good between the parties, even if not recorded. *Blankenship v. Green*, 283 Ky. 700, 705, 143 S.W.2d 294 (1940). Osborn would need clear and convincing evidence to overcome the presumption that delivery of a deed evidences intent to presently pass title. *Goodwin v. Goodwin's Executor*, Ky., 290 S.W.2d 458, 460 (1956).

We also note that Osborn's complaint about the way in which this deed was acquired by LFUCG sounds in fraud, although he denies such characterization. The statute of limitations on such claims is five years. KRS 413.120(11).

Concerning the conveyance of the additional 2.23 acres by the plat which Osborn contends was never approved by the Planning Commission, it was in fact approved on April 15 and August 19, 1976, and on March 17, 1977, but apparently it was never recorded. Osborn argued the plat thus expired by operation of law. He also alleged that he learned of plans to ratify this plat at a meeting of the Planning Commission in 1982 or 1983, but he made it known

he would publicly object, and consideration was removed from the agenda.

■ The LFUCG bases its claim to this second acreage on the doctrine of dedication by estoppel.

KRS 82.400(3) provides:

When any property has been opened to the unrestricted use of the general public for five (5) consecutive years, it shall be conclusively presumed to have been dedicated to the city as a public way or easement, subject to acceptance by the city. The city may, at any time after the expiration of five (5) years from the time the property is opened to the public, pass an ordinance declaring it so dedicated, and accepting the dedication, whereupon it shall be a public way or easement of the city for all purposes.

This section is unchanged from the statute's enactment in 1980. By January 1977, the right-of-way for Man–O–War between Harrodsburg and Higbee Mill Roads, including the disputed property, was enclosed by right-of-way fencing. The road has been continuously used by the public as a thoroughfare since late 1983, more than five years before this suit was filed in November 1989. KRS 82.400 applies to effect a dedication by estoppel. The fact that Osborn did not initiate the opening of the corridor to the public is not material. Dedication may result from acquiescence provided the use is of the necessary character and duration. 23 Am.Jur.2d *Dedication* § 34 (1983). By "character" is meant the use by members of the public believing they have a right to such use, continuous and substantial; the circumstances of the use "must be plainly inconsistent with the owner's right to claim the exclusive use of the land." 23 Am.Jur.2d *Dedication* § 35. *See also Freeman v. Dugger*, Ky., 286 S.W.2d 894 (1956); *City of Bloomfield v. Allen*, 146 Ky. 34, 141 S.W. 400 (1911). The public use need not be of sufficient duration to otherwise establish adverse possession or a prescriptive easement. *Cf. Freeman*, 286 S.W.2d at 897. Certainly, Osborn's standing back and allowing LFUCG to grade, pave, and develop the roadway, coupled with the use by the pub-

lic as a major artery for six years prior to his bringing suit, is sufficient to bring his conduct within the statute to establish dedication such that he cannot now complain.

Based on the 1975 deed to part of the right-of-way, the letter from Osborn expressing his desire to give the second parcel in the same manner as the first, the support of KRS 100.361, and the long, continued use as a public highway, we believe the trial court was confronted with a case with no material facts in issue, and correctly ruled in favor of the Lexington Fayette Urban County Government; Commonwealth of Kentucky, Transportation Cabinet, and Department of Highways as a matter of law. CR 56.03; *Steelvest, Inc. v. Scansteel Service Center,* Ky., 807 S.W.2d 476, 480 (1991). The summary judgment is affirmed.

SCHRODER, J., concurs.

WILHOIT, J., concurs in result.